Rosemary FISHER, the surviving wife of John M. Fisher, Plaintiff and Appellant,

v.

MON DAK TRUCK LINES, INC., a North Dakota Corporation, Michael A. Tracey, and Clemence Schatz, Defendants,

and

White Motor Corporation and Diamond T. Corporation, Defendants and Respondents.

Civ. No. 8522.

Supreme Court of North Dakota.

March 19, 1969.

Rehearing Denied April 9, 1969.

Freed, Dynes & Malloy, Dickinson, for plaintiff and appellant.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for defendants and respondents.

STRUTZ, Justice.

This is an action brought by Rosemary Fisher as surviving wife of John M. Fisher who was killed in a motor-vehicle accident in April of 1966. The action was brought against five defendants, including Diamond T Corporation, which manufactured the truck which was operated by Mon Dak Truck Lines at the time of the accident, and against White Motor Corporation, which, subsequent to the sale of the truck, merged with Diamond T Corporation. The truck in question originally was sold to

Haggard Trucking Company, of Mandan, by the Farmers Union Federated Cooperative Shipping Association (Farmers Union), such sale being made in the year 1958 under circumstances as hereinafter set forth.

Both White Motor Corporation and Diamond T Corporation are foreign corporations, and neither is authorized to do business in the State of North Dakota. Service on them allegedly was made by serving one Peter Neisen, the manager of D. H. Chesley Company, of Fargo, a company that sells White Motor Corporation products, and upon Oliver F. Holman, the area manager for Oliver Corporation, which plaintiff claims now is a branch of White Motor Corporation.

The plaintiff also attempted to obtain service upon these foreign corporations by mailing a copy of the summons and complaint to one Richard Petry, of the legal division of White Motor Corporation, at the home office in Cleveland, Ohio, and by serving a summons and complaint upon the State Highway Commissioner under the provisions of Section 39-01-11, North Dakota Century Code. This section provides for service upon a nonresident motor-vehicle operator who uses the North Dakota highways for the operation of his vehicle, by serving the Highway Commissioner of the State.

The defendants White Motor Corporation and Diamond T Corporation both moved for a dismissal of the summons and complaint as to them under Rule 12, North Dakota Rules of Civil Procedure, on the ground that the court had not acquired jurisdiction by proper service of process. The trial court granted such motion, and the plaintiff has appealed to this court from the order granting motion for dismissal.

■ There is no definite rule by which it can be determined in each case whether a foreign corporation is doing business within this State. In attempting to ascertain whether a corporation is doing business in the State of North Dakota so as to be subject to the service of process in this State, each case must be decided upon its own facts. It is generally held that a nonresident corporation must have certain minimum contacts within the territory of the forum, which must be of such character that maintenance of suit against such corporation does not offend traditional ideas of fair play and substantive justice. Consolidated Cosmetics v. D-A Pub. Co., 186 F.2d 906 (7 Cir. 1951).

The sole question for us to determine on this appeal is whether any of the plaintiff's attempted methods of service were sufficient to give the court jurisdiction over the two foreign corporations, or either of them.

■ We need not give consideration to the attempted service of process by serving the Highway Commissioner. Section 39-01-11 of the North Dakota Century Code provides that the use and operation of a motor vehicle upon the highways of this State by a nonresident shall be deemed an appointment of the Highway Commissioner to be his attorney upon whom service of process may be made in any action growing out of such use and operation of the motor vehicle by the nonresident upon North Dakota highways. Surely neither of these foreign corporations used the North Dakota highways or operated the motor vehicle in question upon our highways at the time of the accident, and the provisions of this statute could not, under the facts of this case, be held to make the attempted service of process valid so as to give the court jurisdiction over either of these nonresident defendants.

■ The plaintiff also attempted to make service of process under Section 10-22-10 of the North Dakota Century Code and Rule 4(d) (4), North Dakota Rules of Civil Procedure. Section 10-22-10 provides that when a claim shall arise out of business transacted in this State by a foreign corporation transacting business without a certificate of authority,

"* * * service of process may be made upon any person who shall be found

within this state acting as an agent of, or doing business for, such corporation, or by mailing a copy thereof to the defendant corporation by registered or certified mail at its last known post office address."

Rule 4(d) (4), North Dakota Rules of Civil Procedure, provides that personal service shall be made, under its provisions, within the State of North Dakota:

"(4) Upon a * * * foreign corporation * * * by delivering a copy of the summons to an officer, director, superintendent or managing or general agent, * * *"

Before valid service of process can be made under Section 10–22–10, North Dakota Century Code, it must be established that the defendants have been transacting business in this State, and the claim of the plaintiff must have arisen out of the business transacted within the State. Service under Rule 4(d) (4), North Dakota Rules of Civil Procedure, must be made within this State upon an officer, director, superintendent, or managing or general agent of the defendant. We first will consider whether plaintiff's claim arose out of business transacted in this State by the defendants.

The sale of the truck in question was made by Farmers Union. It took the order of the buyer for the truck, sent that order to Diamond T in Illinois, where the order was approved and accepted. Delivery of the truck then was made to Farmers Union in Illinois, and by Farmers Union transported to the State of North Dakota where Farmers Union made delivery to the buyer. The record fails to show that either of the foreign corporations in question at any time had a warehouse or any employees in the State of North Dakota. Nothing in the record discloses that Farmers Union was subject to any control by Diamond T or by White Motor Corporation, Farmers Union being an independent business enterprise which, among its many activities, sold some of the products of Diamond T and White Motor corporations. Farmers Union had no authority to bind these foreign corporations. Under these facts, the plaintiff's claim did not arise out of business transacted in this State by these foreign corporations' doing business in North Dakota without a certificate of authority. The transaction in this State was a sale made by Farmers Union, an independent concern.

Was the service on the manager of D. H. Chesley Company or the service on the manager of Oliver Corporation sufficient under Rule 4(d) (4) to give the court jurisdiction over Diamond T or White Motor Corporation?

There is nothing in the record which would justify a finding that either Chesley or Oliver is in any way subject to any control by Diamond T or White. Both Chesley and Oliver are independent business concerns which sell, as a part of their business, some of the products of these foreign corporations.

The plaintiff cites a number of cases which she maintains support her contention that service on the manager of Chesley and service on the manager of Oliver gave to the courts of this State jurisdiction over Diamond T and White Motor Corporation. She places special emphasis on the decision of the United States court in the case of Szantay v. Beech Aircraft Corporation, 237 F.Supp. 393 (D.C.), affirmed in 349 F.2d 60 (4 Cir. 1965), and upon the decision of the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, decided in 1945. Let us analyze these two decisions and see if they sustain the position of the plaintiff in the case before us.

In *Szantay,* the airplane in question was sold by a Nebraska corporation to the plaintiff's decedent, who flew the plane to Miami and planned to return to Chicago. On the way from Florida to Chicago, he made an overnight stop at Columbia, South Carolina, where the plane was serviced by

the defendant Dixie Aviation Company. While flying from Columbia to Chicago, the plane crashed in Tennessee. Suit was commenced in South Carolina and Beech was named as a defendant. Service on Beech was obtained by serving Hawthorne, a Beech sales agency located in South Carolina. The issue in this case was whether the defendant Beech Aircraft Corporation was "doing business" in South Carolina; that is, whether the contacts of Beech Aircraft were sufficient to hold that Beech was doing business in the State of South Carolina so that service on Hawthorne in South Carolina gave to South Carolina courts jurisdiction over Beech.

If the facts as we have stated them thus far were all on which the court in that case based its decision, it would appear that the case does support the contention of the plaintiff. However, in evidence in that case is a contract between Beech Aircraft and a South Carolina concern called "Hawthorne," which the court found gave to Beech absolute control over Hawthorne. This contract gave to Hawthorne an exclusive right to sell Beech aircraft in a certain territory which included parts of South Carolina. Hawthorne was prohibited from selling in any territory other than that assigned to it, and if it did it had to repay a portion of its commission to the concern whose territory it had entered. If a dispute arose between Hawthorne and some other concern, the contract provided that Beech was to determine, when an irregular sale had been made, which distributor was involved and what fee or commission had to be paid and to whom. The decision of Beech in such case was made final by the contract.

Beech further had the right, under the provisions of its contract with Hawthorne, to establish a quota for the sale of the number of airplanes which Hawthorne had to buy from Beech each year, regardless of the market requirements; Hawthorne could use only the advertising which Beech supplied to it or which had been approved by Beech; Hawthorne had to stop the use of any advertising material of which Beech disapproved; Hawthorne further agreed to display signs which Beech deemed necessary to advertise its products; and Hawthorne had to advertise itself as a Beech distributor.

The contract further provided that Beech agreed to pay fifty per cent of Hawthorne's advertising in the "Yellow Pages," and fifty per cent of advertising for and securing by Hawthorne of salesmen for Beech products; Beech furnished to Hawthorne forms on which Hawthorne was required to report financial and operating information to Beech by the fifteenth of each and every month, and, to insure the accuracy of such reports, Beech had the right, under the provisions of the contract, to inspect Hawthorne's business facilities, records, and store of supplies at any time.

Beech further retained the right to fix discounts and prices of airplanes and parts which could be charged by Hawthorne, and to set the sales price at which Hawthorne could sell airplanes, the contract providing:

> "Prices of airplanes, required deposits and discounts applicable thereto, and other terms of purchase shall be as set forth in the BEECHCRAFT SALES POLICY MANUAL."

Hawthorne further was required by Beech to buy and at all times keep on hand and to offer for sale a current supply of genuine Beech spare parts and accessories sufficient to supply adequately the requirements of the territory.

Finally, Hawthorne was prohibited from selling or installing any structural parts on a Beech airplane unless it had been manufactured by Beech. In order to service Beech aircraft, Hawthorne agreed to use special tools developed by Beech, which Beech deemed essential to the proper servicing of its aircraft, and agreed to comply with all of Beech's service directives which might be issued from time to time.

The contract between Beech and Hawthorne contained other provisions, but from

those already mentioned it is clear that Beech had complete control over Hawthorne's entire operation. It exercised a wide control over Hawthorne's sales policies and retained the right to change those policies from time to time, and such changes were binding on Hawthorne immediately. From this record, it is clear that Beech was transacting business in South Carolina, since it controlled Hawthorne, a South Carolina concern. We agree with the decision of the Federal courts holding that Beech, under the facts of that case, was transacting business in the State of South Carolina.

Now let us compare the situation that faces us in this case with the circumstances in *Szantay*. The record fails to show that Diamond T or White Motor Corporation had any right of control over either Chesley or Oliver. Both Chesley and Oliver were independent business concerns and were not subject in any way to control or supervision by Diamond T or White Motor Corporation.

We next will analyze the decision of the United States Supreme Court in the case of International Shoe Company v. State of Washington, *supra,* also cited by plaintiff. That case differs from the case now before the court in that the only purpose of the action brought against the foreign corporation was to make that corporation subject to the State unemployment compensation tax. The State of Washington had enacted a statute which imposed an unemployment compensation tax upon all concerns having employees within the State of Washington, it being a tax on the privilege of employing salesmen within the State. The salesmen in question were residents of the State of Washington. They solicited business for the foreign concern in the State of Washington. The United States Supreme Court held that, under the facts of that case, the employment of such salesmen was subject to the Washington unemployment compensation tax, even though the salesmen were employees of a foreign corporation. Whether the United States Supreme Court would have held that Inter-

national Shoe was doing business within the State of Washington so that service of process could be made on it for any purpose other than imposition of the unemployment tax is not determined.

The plaintiff also asserts that the decision of this court in 501 DeMers, Inc. v. Fink, 148 N.W.2d 820 (N.D.1967), supports the plaintiff's contention that service on the foreign-corporation defendants in this case was valid. We fail to see any analogy. In *501 DeMers*, the defendants, who were nonresident partners, had been conducting the business of operating three parking lots in the State of North Dakota at locations in Grand Forks, Minot, and Fargo. The Grand Forks parking lot had ceased operation, and the claim of the plaintiff arose out of the conduct of the business at that point. But the defendants did continue to operate lots in Minot and in Fargo. Service of summons and complaint was made on the nonresident partners by serving the manager of their parking lot in Minot, by service of process on one of the defendants personally in St. Paul, and by service on the other defendant by registered mail. An affidavit of compliance was executed by the plaintiff and filed.

That case clearly does not support the position contended for by the plaintiff in this case. The defendants *were* in business in the State of North Dakota; they were operating two parking lots in this State at the time of service; and service was made upon the manager of one of these lots, which service this court held was valid. It could not be contended in *501 DeMers* that the defendants were not doing business in this State, even though the partners were not personally present.

 The foreign corporations attempted to be served in this case conducted no activity in the State of North Dakota except to ship products into the State in response to orders sent to them by a local dealer. One of such corporations occasionally did send an employee into the State to call on the local dealer to encourage

sales, but such foreign corporation had absolutely no control or authority over the local concern. This did not constitute "doing business" in the State of North Dakota so as to subject such foreign corporation to service of process in this State.

For reasons stated in this opinion, the order of the trial court granting the motion for dismissal of the summons and complaint as to the defendants White Motor Corporation and Diamond T Corporation is affirmed.

TEIGEN, C. J., and ERICKSTAD, KNUDSON and PAULSON, JJ., concur.