**HEBRON BRICK CO., Plaintiff and Appellant,**

v.

**The ROBINSON BRICK AND TILE COMPANY, a Foreign Corporation, Defendant and Appellee.**

**Civ. No. 9111.**

Supreme Court of North Dakota.

Oct. 7, 1975.

E. J. Rose, Bismarck, for plaintiff and appellant.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee; argued by Mr. Thomas A. Mayer.

PAULSON, Judge.

This is an appeal from an order of the Burleigh County District Court dismissing for lack of personal jurisdiction the action of the plaintiff, Hebron Brick Company [hereinafter "Hebron Brick"] against The Robinson Brick & Tile Company, a foreign corporation [hereinafter "Robco"].

This action by Hebron Brick is the result of earlier litigation venued in Burleigh County District Court [*V. J. Spaedy v. Hebron Brick Co.*, Civil No. 22330 (April 4, 1974)], in which V. J. Spaedy obtained a judgment against Hebron Brick because certain bricks sold to Mr. Spaedy by Hebron Brick, but manufactured by Robco, were defective.

Robco is a Colorado corporation with its principal place of business in Denver, Colorado. Robco is not authorized to transact business in North Dakota, nor does it maintain an office or agent, as such, in this State. Robco does, however, make wholesale sales of bricks or tile to dealers in North Dakota, and, although the activities of such dealers are not controlled by Robco, the bricks manufactured by Robco are resold to North Dakota customers for use in this State.

The underlying transaction in this case involves the sale by Hebron Brick of certain bricks, which were manufactured by Robco, to V. J. Spaedy of Bismarck for use in the construction of a house. The sale in question occurred on January 11, 1972, when Richard Nelson, an employee of Hebron Brick, telephoned Robco at its Denver, Colorado, office to place an order for a particular type of brick which Mr. Spaedy had chosen from a sample case furnished to Hebron Brick by Robco. Robco had furnished the sample case to Hebron Brick so that representatives of Hebron Brick could show it to prospective customers in North Dakota. Orders for the type of brick exhibited in Robco's sample case were filled by Hebron Brick after purchasing the brick at wholesale from Robco.

An employee of Robco's at Denver, Colorado, Marshall W. "Dutch" Russell, received the telephoned order from Mr. Nelson and completed an order form. Mr. Nelson subsequently mailed a memorandum dated February 4, 1972, to Robco's Denver, Colorado, office, increasing the quantity of bricks originally ordered by telephone on January 11, 1972. The memorandum was mailed at Bismarck, North Dakota, and was received by Robco in Denver, Colorado.

Terms of the sale were at a net price F.O.B. Robco's Denver plant. Consequently shipping charges were borne by Hebron Brick, although actual arrangements for shipment of the bricks from Denver to Bismarck, North Dakota, were made by Robco.

After the brick was installed in Mr. Spaedy's house, the white veneer finish on such bricks flaked off. It was asserted that shortly after the defective condition of the brick was discovered, Robco offered to send a man to Bismarck to "touch up" the brick

and to guarantee the "touch up" for one year, but that Mr. Spaedy rejected such offer. Thereafter the original suit by Mr. Spaedy against Hebron Brick was commenced. A third-party complaint filed by Hebron Brick against Robco was dismissed by the trial court for lack of personal jurisdiction.

Mr. Spaedy obtained a judgment against Hebron Brick for the sum of $4,316.84, plus interest and costs, based upon a finding by the trial court that the bricks were defective and that Hebron Brick had therefore breached the implied warranty of fitness for use. Robco did not appear and defend in such action although notified of the suit by Hebron Brick.

The present suit was thereafter commenced by Hebron Brick against Robco, wherein Hebron Brick alleges that Robco was guilty of bad faith in not defending the breach-of-implied-warranty claim in the original suit by Mr. Spaedy. Hebron Brick asserts that it has suffered damages because of Robco's failure to defend against Mr. Spaedy's suit in the following amounts:

a. $4,316.84, plus interest and costs, owed by Hebron Brick to Mr. Spaedy based on the judgment in that earlier action;

b. $813.43 in legal fees and costs incurred in defending against Mr. Spaedy's action; and

c. Reasonable attorney's fees and costs in the present action.

The summons and complaint were served on Robco at its Denver, Colorado, office, pursuant to Rule 4, North Dakota Rules of Civil Procedure. This appeal follows a dismissal of such action by the Burleigh County District Court.

The only issue presented for decision in this case is whether or not Robco is amenable to service of process under the "long-arm" provisions of Rule 4, N.D.R.Civ.P., and, consequently, subject to the personal jurisdiction of North Dakota courts. The applicable portion of Rule 4, N.D.R.Civ.P., provides:

"*Rule 4.—Persons Subject To Jurisdiction—Process—Service*

"*(a) Definition of person.* As used in this rule, 'person' includes an individual or his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of this state and whether or not organized under the laws of this state.

"*(b) Jurisdiction of person.*

"*(1) Personal jurisdiction based upon presence or enduring relationship.*—A court of this state may exercise personal jurisdiction over a person found within, domiciled in, organized under the laws of, or maintaining his or its principal place of business in this state as to any claim for relief.

"*(2) Personal jurisdiction based upon contacts.*—A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's

"(A) transacting any business in this state;

"(B) contracting to supply or supplying services, goods, or other things in this state;

"(C) committing a tort within or without this state causing injury to another person or property within this state;

"(D) committing a tort within this state causing injury to another person or property within or without this state;

"(E) owning, having any interest in, using, or possessing property in this state;

"(F) contracting to insure another person, property, or other risk within this state; or

"(G) acting as a director, manager, trustee, or officer of a corporation organized under the laws of, or having its

principal place of business within, this state.

"*(3) Limitation on jurisdiction based upon contacts.* If jurisdiction over a person is based solely upon paragraph (2) of this subdivision, only a claim for relief arising from bases enumerated therein may be asserted against him.

"*(4) Acquisition of jurisdiction.* A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, or by voluntary appearance in an action by any person either personally or through an attorney or any other authorized person."

Since this Court's 1969 decisions in *Fisher v. Mon Dak Truck Lines, Inc.*, 166 N.W.2d 371 (N.D.1969), and *Scranton Grain Co. v. Lubbock Machine & Supply Co.*, 167 N.W.2d 748 (N.D.1969), the North Dakota "long-arm" provisions have undergone significant change. In both of those 1969 cases, this Court held that a foreign corporation which manufactured products sold to North Dakota residents through independent North Dakota businesses was not subject to the jurisdiction of our courts because such corporations were not "doing or transacting business" within this state.

On July 1, 1969, subsequent to the two decisions cited above, § 28–06.1–02, N.D. C.C., became effective.[1] Speaking of the Legislature's action in adopting § 28–06.1–02, N.D.C.C., this Court said, in *Scranton Grain, supra* 167 N.W.2d at 753:

"The Legislative Assembly, which recently concluded its session, obviously

realized that our present statutes providing for service upon foreign corporations are not so broad in their scope as are the statutes or rules of procedure in other jurisdictions. In an attempt to bring our statutes on this subject in line with those of other jurisdictions, the 1969 Legislature enacted into law Senate Bill No. 412. This Act, when it becomes effective on July 1, will broaden the jurisdiction of our courts over nonresidents transacting business in this State and permit service of process upon nonresidents previously exempt under our law."

Finally, our "long-arm" provisions were again revised by the Court's adoption of Rule 4, N.D.R.Civ.P., in 1971. Adoption of Rule 4 superseded § 28–06.1–02, N.D.C.C. Under Rule 4(b)(2)(B), N.D.R.Civ.P., the courts of this State may now exercise personal jurisdiction over any person when the claim for relief arises from the person's "contracting to supply or supplying services, goods, or other things in this state". The question of the scope and application of Rule 4(b)(2)(B) is specifically raised by Robco in this appeal.

In defining the scope of Rule 4, N.D.R. Civ.P., we are guided by the rulings of the Michigan courts which have considered the issue under the Michigan "long-arm" provisions, from which our Rule 4 was adapted.

In a prelude to the adoption of Rule 4, this Court, in *Scranton Grain, supra* 167 N.W.2d at 753, said:

"We would also point out that hearings have already been held in this court on

1. 28–06.1–02, N.D.C.C. "*Subject to jurisdiction.*—Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through an employee, or through an agent, of any of the following acts:
    "1. The transaction of any business within the state.
    "2. The commission of any act which results in accrual within this state of a tort action.
    "3. The ownership, use, or possession of any property, or of any interest therein, situated within this state.

"4. Contracting to insure any person, property, or risk located within this state at the time of contracting.
    "5. Entering into a contract for services to be rendered or for materials to be furnished in this state by such person.
    "6. Acting as director, manager, trustee, or other officer of any corporation organized under the laws of or having its principal place of business within this state, or as executor or administrator of any estate within this state."

proposed new rules of civil procedure and proposed amendments to existing rules of civil procedure. These proposed changes include a complete restatement of Rule 4, providing for service of process. If this new Rule 4 is adopted as now proposed, the extent or application of the rule providing for service of process upon nonresidents will be greatly enlarged."

The language of Rule 4 was an adaptation of the language used in setting forth the long-arm proposals contained in § 1.03 [2] of the Uniform Interstate and International Procedure Act [hereinafter "Uniform Act"], 13 U.L.A.Civ.Proc. and Rem.Laws 285 (1975), Commentaries to Rule 4(b), N.D.R. Civ.P., Civil Rules Manual of the State Bar Association of North Dakota (1971), page 4. According to the Commissioners' Comment accompanying the Uniform Act, § 1.03(a)(2) was derived from Mich.Stat.Ann. §§ 27A.705, 27A.715, 27A.725, and 27A.735, all of which have been recodified as 32 Mich.C.L.A. §§ 600.705, 600.715, 600.725, and 600.735, by the adoption by the Michigan Legislature of Chapter 7 of the Revised Judicature Act of 1961.

The Michigan courts have given the "long-arm" provisions contained in 32 Mich. C.L.A. §§ 600.705 (individuals), 600.715 (corporations), 600.725 (partnerships), and 600.-735 (associations), a broad interpretation, holding that those sections extend personal jurisdiction over nonresidents to the farthest limits permitted by due process. *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971); [3] *Kiefer v. May*, 46 Mich.App. 566, 208 N.W.2d 539, 541 (1973). As the Michigan Court of Appeals said in *Schneider v. Linkfield*, 40 Mich.App. 131, 198 N.W.2d 834, 836 (1972), *aff'd*, 389 Mich. 608, 209 N.W.2d 225 (1973):

"The so-called 'long-arm' statute is construed by the courts of this state [Michigan] as granting the broadest basis of jurisdiction which is still consistent with due process."

■ The scope of Rule 4, N.D.R.Civ.P., is no more restrictive than the scope of the Michigan statute.[4] Both were designed to permit the state courts to exercise personal jurisdiction to the fullest extent permitted by due process.[5] It is therefore no longer

2. "§ 1.03. (Personal Jurisdiction Based upon Conduct)

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

"(1) transacting any business in this state;

"(2) contracting to supply services or things in this state;

"(3) causing tortious injury by an act or omission in this state;

"(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; (or)

"(5) having an interest in, using, or possessing real property in this state (; or

"(6) contracting to insure any person, property, or risk located within this state at the time of contracting).

"(b) When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts

enumerated in this section may be asserted against him."

3. The Michigan Supreme Court cited the Practice Commentary to Chapter 7 (Bases of Jurisdiction) of the Michigan Revised Judicature Act of 1961, in which Professor Carl S. Hawkins of the University of Michigan Law School explained that:

"RJA Chapter 7 contemplates the optimum use of the state's judicial power to cover every contact and relationship with the state which gives the state a sufficient interest to make the exercise of judicial power constitutionally permissible. This extended use of state judicial power is sanctioned by contemporary decisions of the United States Supreme Court (citations omitted)." Vol. 32 Mich.C.L.A. 329 (1968).

4. For broad provisions in other jurisdictions, see: Rule 4(B)(1)(e), Mont.R.Civ.P., Repl. Vol. 7, Revised Codes of Montana, 1947; 6 S.D.C.L. Sec. 15-7-2; Wis.Stat.Ann., Title 25, Sec. 262.05.

5. *See, e. g., Ventling v. Kraft*, 83 S.D. 465, 161 N.W.2d 29 (1968); *Flambeau Plastics*

necessary for the courts to find that a nonresident defendant was either "doing or transacting business" in this state before our courts can exercise personal jurisdiction over such defendant. This represents a significant change from the situation presented to this Court in the cases of *Scranton Grain Co. v. Lubbock Machine & Supply Co., supra,* and *Fisher v. Mon Dak Truck Lines, Inc., supra.* All that is required under Rule 4(b), N.D.R.Civ.P., is that the nonresident defendant have sufficient minimal contacts with North Dakota to permit our courts to exercise personal jurisdiction without offending the basic requirements of due process. The focus of Rule 4 is on the defendant's contacts with North Dakota.

■ The United States Court of Appeals for the Eighth Circuit has recently summarized the due process standards which we must apply in cases involving the exercise of long-arm jurisdiction by North Dakota over nonresident defendants. In *Caesar's World, Inc. v. Spencer Foods, Inc.,* 498 F.2d 1176, 1180 (8th Cir. 1974), that Court said:

"Having held the long-arm statute applicable by its terms, we must next determine whether its application in this case offends due process. This depends on whether the nonresident defendant has sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), whether appellant has invoked the benefits and protections of Iowa law by reason of its activities there, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and, since this is a contract dispute, whether the contract has a 'substantial connection' with the forum state, *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). This court has articulated five factors to be

considered in determining whether personal jurisdiction can be exercised under these general guidelines:

"(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 368 (8th Cir. 1969).

*See also Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir. 1965); *Thompson v. Ecological Science Corp.,* 421 F.2d 467 (8th Cir. 1970); *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir. 1973); *Block Industries, Inc. v. DHJ Industries, Inc.,* 495 F.2d 256 (8th Cir. 1974). These factors do not establish a mathematical formula from which to derive fair play and substantial justice, but rather provide a general guide in applying that abstract concept. *See Gardner Engineering Corp. v. Page Engineering Co., supra,* 484 F.2d at 31."

In applying the same standards summarized in *Caesar's World, supra,* the Eighth Circuit Court of Appeals, in *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365 (8th Cir. 1969), found that the Minnesota courts, under its broad long-arm statute, could exercise personal jurisdiction over the nonresident seller in circumstances similar to the circumstances in the instant case. The Appeals Court, in *Electro-Craft, supra,* 417 F.2d at 368–370, said:

"(1 & 2) The quality and the quantity of the contacts were such as to satisfy the requirements.

"(a) The defendant purposely availed itself of the privilege of doing business with a Minnesota resident. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2

*Corp. v. King Bee Mfg. Co.,* 24 Wis.2d 459, 129 N.W.2d 237, 240 (1964); *Vasquez v.*

*Falcon Coach Co., Inc.,* 376 F.Supp. 815 (D.N.D.1974).

L.Ed.2d 1283 (1958). It entered into a transaction having an impact on the commerce of that state. By so doing, it invoked the benefit and protection of Minnesota's laws and could reasonably have anticipated that its act would have consequences in Minnesota. The fact that no agents of the defendant entered the state is not controlling. *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968).

"(b) While the plaintiff initiated negotiations with the defendant, the defendant actively and voluntarily participated in them thereafter. *Southern Machine Company v. Mohasco Industries, Inc., supra*; *Shealy v. Challenger Manufacturing Company*, 304 F.2d 102, 104 (4th Cir. 1962). [Footnote omitted.]

"(c) While the contract was consummated in Texas,[10] contractual consequences were reasonably anticipated in Minnesota.

"(Footnote) 10. In *Travelers Health Association v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), the Supreme Court rejected the argument that a state's exercise of jurisdiction must be determined by the place of contracting:

"'* * * Instead we accorded "great weight" to the "consequences" of the contractual obligations in the state where the insured resided and the "degree of interest" that state had in seeing that those obligations were faithfully carried out.'

*Id.* at 647–648, 70 S.Ct., at 930."

"(d) While the equipment was shipped F.O.B. Texas, the defendant made arrangements for the shipment and knew that the equipment was being shipped directly to a Minnesota resident without passing through an intervening dealer.

"(e) While the defendant structured the transaction so as to be able to secure payment at a Texas bank without maintaining an action in Minnesota for the price, he could have used the Minnesota courts to obtain payment, particularly if the plaintiff had received but failed to acknowledge receipt of the shipment in Minnesota.

"(f) The defendant made full use of the arteries of interstate commerce to complete the contract. Interstate mail, telephone and trucking facilities were used by the defendant in completing the transaction. In addition, interstate banking facilities, including those of a New York bank, were used in setting up the payment procedures. Thus, it can hardly be said that the transaction from a practical point of view was a Texas one.

"(g) The transaction was a significant one involving the sale and shipment of 278 units over a period of twenty-one days. The value of the units exceeded $132,000. [Footnote omitted.]

"(3) The cause of action clearly arose out of the defendant's contacts with the Minnesota resident.

"(4 & 5) The interest of Minnesota in providing a forum for its resident under the circumstances of this case is obvious. The convenience of the parties does not appear to be a material consideration and is not urged as such by the parties."

■ Ultimately, however, each question of personal jurisdiction must be decided on a case-by-case basis depending upon the particular facts and circumstances of each case. *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 31 (8th Cir. 1973).

■ In the instant case, we find that the quality and quantity of contacts which Robco had with North Dakota are substantially similar to those found in *Electro-Craft*. Robco purposely and knowingly supplied Hebron Brick with a sample case of brick, held itself out as willing to sell those products for use in North Dakota and by its actions can be said to have encouraged Hebron Brick, and apparently other dealers as well, to solicit and place orders from North

Dakota residents for Robco products. Although the contract between Robco and Hebron Brick was a Colorado contract, the agreement clearly affected commerce in North Dakota, and Robco could reasonably have expected that the act would have consequences in North Dakota, especially if the goods were defective. Despite the fact that delivery was F.O.B. Robco's Denver plant, Robco made arrangements for shipment of the bricks directly to Bismarck, North Dakota. In addition, Robco made full use of the arteries of interstate commerce, including interstate telephone lines, mails, and common carriers, to complete the transaction. The telephone call ordering the brick originated in North Dakota, the follow-up memorandum altering the order's quantity was sent from North Dakota, and the bricks were shipped to North Dakota with Robco's full knowledge and consent.[6] Robco clearly was engaged in a transaction which called for the supplying of goods in North Dakota.

The United States District Court for the Northern District of Iowa has recently considered a similar case. In *Midland Forge, Inc. v. Letts Industries, Inc.*, 395 F.Supp. 506 (N.D.Iowa 1975) an Iowa corporation contracted with Letts Industries, Inc. a Michigan corporation, for the purchase of three electro-hydraulic drop forging hammers. The hammers were manufactured on order from Letts by a German corporation. Letts Industries, Inc., was not a subsidiary or commission agent of the German corporation, but rather an independent business concern buying and reselling products manufactured by other firms. The hammers were defective and the Iowa corporation sued, joining the German corporation, the manufacturer, as an additional defendant. The United States District Court held that the German corporation was subject to the Court's personal jurisdiction, finding that the implied warranties of merchantability and fitness for purpose which accompanied the sale of the machines established the

sufficient connection of the contract with Iowa to satisfy due process requirements.

■ In the instant case, Hebron Brick contends it was damaged by Robco's failure to defend Mr. Spaedy's breach of warranty action. The suit by Hebron Brick is on its contract with Robco, a contract which had a substantial connection with this State because of the consequences which could occur in this State if the goods were defective. Robco invoked the benefits and protections of the laws of this State when it held itself out as willing to furnish for use in North Dakota building materials of substantial value. For analogous fact situations in cases involving tortious conduct and products liability, *see generally Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761, 766 (1961); *Metal-Matic, Inc. v. Eighth Judicial District Court*, 82 Nev. 263, 415 P.2d 617, 618–619 (1966). When the quality of the bricks so furnished is drawn into question, Robco cannot avoid the jurisdiction of our courts simply by structuring the delivery terms of its contract with the North Dakota resident to transfer ownership of the bricks to Hebron Brick in Colorado. Clearly, this course of action arose from Robco's contacts with a resident of North Dakota, which led to the supplying of bricks used in North Dakota.

Finally, the interests of North Dakota and the convenience of litigating the dispute in this State are obvious. Because long-arm provisions are designed to offer protection for residents of the forum state, and because the damages for which Hebron Brick seeks recourse from Robco arose as the result of previous litigation conducted in North Dakota, we believe that it is appropriate that this litigation also be conducted in North Dakota. In fact, Robco does not argue that it is unduly burdensome on it to conduct the litigation here, but asserts that under the rationale of *Shern v. Tractor Supply Company of Grand Forks*, 381 F.Supp. 1331 (D.N.D.1974), it does not

---

**6.** For a similar factual situation involving less contact with the forum state, *See Ehlers* *v. U. S. Heating & Cooling Mfg. Corp.*, 267 Minn. 56, 124 N.W.2d 824 (1963).

have sufficient contacts with North Dakota to permit our courts to exercise jurisdiction. The decision in *Shern*, however, is distinguishable and is not applicable to the case at bar. We believe that, in the instant case, it is in the best interest of both North Dakota and the parties that this litigation be conducted in our courts.

In conclusion, we find that assertion of personal jurisdiction by North Dakota courts in this case does not offend those traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and in the Due Process Clause of Section 13 of the Constitution of North Dakota.

The order of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.