1998 ND 166

**Fred EGGL, Plaintiff and Appellee,**

v.

**FLEETGUARD, INC., Defendant and Appellant.**

**Civil No. 970392.**

Supreme Court of North Dakota.

Sept. 15, 1998.

George M. Ackre, of Ackre & Baer Chartered, Cando, for plaintiff and appellee.

Roger J. Minch, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Fleetguard, Inc., has appealed from an order denying its motion to vacate a default judgment. Because Fleetguard was never properly served, the court lacked personal jurisdiction and the judgment was void. We therefore reverse and remand.

I

[¶ 2] In 1989, Fred Eggl bought an oil filter manufactured by Fleetguard from a retailer in Cando, North Dakota. The oil filter allegedly ruptured, damaging the engine in Eggl's tractor. Eggl's attorney prepared a summons and complaint alleging var-

ious claims against Fleetguard, and sent them by certified mail to Fleetguard's address in Tennessee on November 13, 1989. The mailing was not addressed to any officer, director, or other specific individual at Fleetguard. The return receipt was signed by Joe Galbreath, a janitor at Fleetguard. The summons and complaint were apparently lost in the mailroom at Fleetguard, and Fleetguard did not answer the complaint. On January 30, 1990, a default judgment was entered against Fleetguard.

[¶ 3] In 1997, Fleetguard learned of the default judgment when Eggl attempted to collect on the judgment. Fleetguard promptly brought a motion to vacate the judgment under N.D.R.Civ.P. 60(b)(iv), asserting it had never been properly served and the court therefore lacked personal jurisdiction. The court denied the motion, concluding the service by certified mail in 1989 was proper under North Dakota law. Fleetguard appealed.

## II

[¶ 4] Valid service of process is necessary to acquire personal jurisdiction over a defendant, and a judgment entered without personal or subject matter jurisdiction is void. *McComb v. Aboelessad,* 535 N.W.2d 744, 747 (N.D.1995). Rule 60(b)(iv), N.D.R.Civ.P., allows relief from a void judgment. Although the decision to vacate a judgment under Rule 60(b) is ordinarily left to the discretion of the trial court, the court has no discretion under subdivision (b)(iv) if the judgment is void. *Johnson, Johnson, Stokes, Sandberg & Kragness, Ltd. v. Birnbaum,* 555 N.W.2d 583, 585 (N.D.1996); *First Western Bank & Trust v. Wickman,* 527 N.W.2d 278, 279 (N.D.1995). If the judgment is valid, the motion to vacate must be denied; if the judgment is void, the court has no discretion to protect it and it must be vacated. *Johnson,* 555 N.W.2d at 585; *First Western,* 527 N.W.2d at 279. The question to be resolved is whether the judgment is void as a matter of law, and our review of the trial court's decision is plenary. *First Western,* 527 N.W.2d at 279.

## III

[¶ 5] Eggl asserts Fleetguard's motion to vacate was untimely, coming more than seven years after judgment was entered. A motion to vacate a judgment under N.D.R.Civ.P. 60(b) "must be made within a reasonable time." Cases construing the corresponding federal rule, however, clarify that there is no time limit for attacking a void judgment under Rule 60(b)(iv). *See, e.g., New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142 (5th Cir.1996); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.,* 953 F.2d 21, 23 (1st Cir.1992); *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987); *see also* 12 James Wm. Moore et al., *Moore's Federal Practice* §§ 60.44[5][c], 60.65[1] (1998); 11 Charles Alan Wright et al., *Federal Practice and Procedure* §§ 2862, 2866 (1995). "[T]here is and can be no time limit on judicial relief from a judgment that is, in fact, already a nullity and always subject to direct and collateral attack," and therefore "[a]nytime is a 'reasonable' time to set aside a void judgment." 12 Moore, *supra,* § 60.65[1], at 60–197. Fleetguard's motion was not untimely.

## IV

[¶ 6] Fleetguard asserts the mail service attempted by Eggl in 1989 failed to comply with the requirements for service in effect at that time. Eggl asserts service was proper and met the requirements of either N.D.R.Civ.P. 4(d) or N.D.C.C. § 10–22–10.

### A

[¶ 7] At the time service occurred in 1989, N.D.R.Civ.P. 4(d)(3) provided:

*How Service Made Outside the State.* Service upon any person subject to the personal jurisdiction of the courts of this state may be made outside the state:

(A) in the manner provided for service within this state, with the same force and effect as though service had been made within this state;

(B) in the manner prescribed by the law of the place in which the service is made for service in that place in an

action in any of its courts of general jurisdiction;

(C) by any form of mail addressed to the person to be served and requiring a signed receipt and resulting in delivery to that person;

(D) as directed by the foreign authority in response to a letter rogatory; or

(E) as directed by order of the court.

Eggl asserts the attempted service in 1989 complied with N.D.R.Civ.P. 4(d)(3)(C). Fleetguard argues that provision must be read in conjunction with N.D.R.Civ.P. 4(d)(2)(D), which governed service upon a corporation within the state:

*How Service Made Within the State.* Personal service of process within the state must be made as follows:

\* \* \* \* \* \*

(D) upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by (i) delivering a copy of the summons to an officer, director, superintendent or managing or general agent, or partner, or associate, or to an agent authorized by appointment or by law to receive service of process in its behalf, or to one who acted as an agent for the defendant with respect to the matter upon which the claim of the plaintiff is based and who was an agent of the defendant at the time of service; ... or (iii) any form of mail addressed to any of the foregoing persons and requiring a signed receipt and resulting in delivery to that person; ...

■ [¶ 8] Rule 4(d)(2)(D) requires mail service to a corporation be addressed to an officer, director, or other responsible person in management of the corporation. We agree with Fleetguard that mail service upon a foreign corporation under Rule 4(d)(3)(C) is valid only if it is addressed to a person listed in Rule 4(d)(2)(D). Because personal jurisdiction under Rule 4 may be acquired based upon minimum contacts, *see* N.D.R.Civ.P. 4(b), we will construe the Rule to require mail service directed to an officer, director, or someone otherwise in a position of man-

agement within the corporation. Attempted mail service addressed only to the corporation's office, received and signed for by a janitor, does not comport with the spirit or policy of Rule 4. Accordingly, we conclude the attempted mail service *did not comply* with the requirements of Rule 4.

**B**

■ [¶ 9] Eggl asserts mail service was allowed under N.D.C.C. § 10–22–10 which, at the time service was attempted in 1989,[1] provided in part:

Whenever a claim arises out of business transacted in this state by a foreign corporation transacting business without a certificate of authority, service of process may be made upon any person who is found within this state acting as an agent of, or doing business for, such corporation, or by mailing a copy to the defendant corporation by registered mail at its last known post-office address.

Fleetguard agrees the statute permits service by mail which is not directed to a specific officer or director of the corporation, but argues the statute was inapplicable because Fleetguard was not "transacting business" in North Dakota and therefore was not subject to service by mail under the statute.

[¶ 10] The parties dispute the meaning of "transacting business" as contemplated by the statute. Fleetguard asserts merely selling its products to independent retailers for resale in the state did not constitute transacting business. Eggl argues the amendment of N.D.R.Civ.P. 4 in 1971, incorporating the "minimum contacts" theory of personal jurisdiction, changed the definition of transacting business, and N.D.C.C. § 10–22–10 thus could be applied to any foreign corporation with minimum contacts with North Dakota.

[¶ 11] We do not believe the 1971 amendment of Rule 4 altered the requirements of N.D.C.C. ch. 10–22. Chapter 10–22 created numerous requirements for foreign corporations transacting business within the state. They were required to secure a certificate of

1. Chapter 10–22, N.D.C.C., was repealed in 1997. *See* 1997 N.D. Sess. Laws ch. 103, § 248.

authority from the secretary of state, and to maintain a registered office and registered agent within the state. N.D.C.C. §§ 10–22–01, 10–22–08. The registered agent was deemed authorized to accept service of process upon the corporation, and, if the corporation failed to maintain a registered agent or the registered agent could not be found at the registered office, service could be made upon the secretary of state as an agent of the corporation. N.D.C.C. § 10–22–10. Only if the corporation was required to meet these statutory mandates, and had failed to secure the required certificate of authority, did N.D.C.C. § 10–22–10 permit service by registered mail to the corporation's last known address.

[¶ 12] The dispositive question therefore is whether Fleetguard was transacting business in North Dakota. Section 10–22–01, N.D.C.C., specifically provided that merely effecting sales through independent contractors in the state or engaging in interstate commerce did not constitute transacting business. This Court, in cases factually similar to this one, held a foreign corporation which merely manufactures products which are ultimately sold to North Dakota consumers is not transacting business in the state and is not amenable to process under N.D.C.C. § 10–22–10. *See Scranton Grain Co. v. Lubbock Machine & Supply Co.,* 167 N.W.2d 748, 752 (N.D.1969); *Fisher v. Mon Dak Truck Lines, Inc.,* 166 N.W.2d 371, 374–77 (N.D.1969). As the court explained in *Scranton Grain,* 167 N.W.2d at 752:

> Where such foreign corporation's products are sold to a North Dakota buyer through an independent North Dakota concern, over which the foreign corporation exercises absolutely no control, it cannot be said that the foreign corporation is transacting business in this State.

[¶ 13] According to Fleetguard's undisputed evidence, its only contact with North Dakota is sale of its products through independent retailers. It did not maintain an office here, had no employees in the state, and exercised no control over the retailers which sold its products. Thus, under *Scranton Grain, Fisher,* and N.D.C.C. § 10–22–01, Fleetguard was not transacting business in North Dakota.

[¶ 14] Eggl asserts, however, *Scranton Grain* and *Fisher* were overruled by *Hebron Brick Co. v. Robinson Brick & Tile Co.,* 234 N.W.2d 250 (N.D.1975), and Fleetguard was subject to service of process under N.D.C.C. § 10–22–10 if it had minimum contacts with North Dakota. Eggl's arguments are premised upon a misreading of *Hebron Brick* and a misinterpretation of N.D.C.C. ch. 10–22.

[¶ 15] In *Hebron Brick,* this Court addressed whether a foreign corporation which had supplied defective bricks to a North Dakota retailer for resale in this state was subject to jurisdiction under the "long-arm" provisions of N.D.R.Civ.P. 4, which incorporated the minimum contacts theory. The Court concluded the corporation was amenable to process under Rule 4, and application of the Rule to the corporation did not violate due process. *Hebron Brick,* 234 N.W.2d at 259. The issue in *Hebron Brick* was not, however, the validity of service of process by mail under N.D.C.C. § 10–22–10.

[¶ 16] In addressing *Scranton Grain* and *Fisher,* the *Hebron Brick* Court noted that, prior to the amendment of Rule 4 in 1971,[2] those cases represented the limits of personal jurisdiction over foreign corporations. The amendment of Rule 4 in 1971 expanded personal jurisdiction over foreign corporations based upon contacts which did not constitute "transacting business" under N.D.C.C. ch. 10–22. *See* N.D.R.Civ.P. 4(b)(2). Although personal jurisdiction had been expanded, and *Scranton Grain* and *Fisher* no longer defined the limits of that jurisdiction, *Hebron Brick* did not affect the central holding of *Scranton Grain* and *Fisher* regarding the interpretation of "transacting business" under Chapter 10–22.

[¶ 17] Certainly, the holding in *Hebron Brick* did not require that all foreign corporations with minimum contacts with North

---

2. The Court also noted the legislature had statutorily expanded personal jurisdiction with the adoption in 1969 of N.D.C.C. § 28–06.1–02, which was similar to the minimum contacts formulation in N.D.R.Civ.P. 4(b)(2). *See Hebron Brick,* 234 N.W.2d at 254. Section 28–06.1–02 was superseded by Rule 4 in 1971. *See Hebron Brick,* 234 N.W.2d at 254.

Dakota secure a certificate of authority under N.D.C.C. ch. 10–22. Although minimum contacts were constitutionally sufficient to allow exercise of personal jurisdiction over a foreign corporation, only those corporations transacting business were subject to the mandates of Chapter 10–22. Similarly, because the service-of-process provisions in N.D.C.C. § 10–22–10 remained based upon "transacting business," service under that section was only appropriate if that more stringent requirement was met. Accordingly, *Hebron Brick* did not overrule *Scranton Grain* and *Fisher*, and those cases remained valid law on the interpretation of "transacting business" for purposes of Chapter 10–22.

[¶ 18] Although it may appear inconsistent to apply different standards to the service-of-process provisions in Rule 4 and N.D.C.C. § 10–22–10, we believe there are valid reasons for the difference. Rule 4 allows acquisition of personal jurisdiction over a foreign corporation upon a showing of minimum contacts with North Dakota. Because the corporation's contacts with North Dakota fall short of "transacting business," and its relationship with North Dakota is more tangential, Rule 4 imposes a stricter service-of-process requirement: return-receipt mail addressed to, and actual delivery to, an officer, director, or other management official of the company. By contrast, N.D.C.C. § 10–22–10 allowed service upon a foreign corporation by mail to its last known address only if the corporation was transacting business in this state without the required certificate of authority. By definition, such a corporation was already acting in violation of North Dakota law. If the corporation had complied with North Dakota law, service could have been accomplished upon its registered agent in the state, or upon the secretary of state as the corporation's agent. *See* N.D.C.C. § 10–22–10. When the corporation had failed to comply with the dictates of North Dakota law, mail service directed to the corporation's last known address was sufficient.

[¶ 19] We conclude service upon Fleetguard under N.D.C.C. § 10–22–10 was appropriate only if it was transacting business in North Dakota. The record in this case demonstrates Fleetguard was not transacting business in North Dakota under Chapter 10–22.

V

[¶ 20] Because Fleetguard was never properly served under N.D.R.Civ.P. 4 or N.D.C.C. § 10–22–10, the court lacked personal jurisdiction and the judgment was void. Accordingly, we reverse and remand for entry of an order vacating the judgment.

[¶ 21] VANDE WALLE, C.J. and MARING, MESCHKE and SANDSTROM, JJ., concur.

