John Donald BECKER, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a corporation, Defendant & Third-party Plaintiff,

Walker Manufacturing Company of Wisconsin, a Wisconsin corporation, Third-party Defendant.

Civ. No. 10051.

United States District Court
D. Maryland.

Nov. 3, 1958.

Lowell H. Ewing, John B. Casey and William Reback, Washington, D. C., for plaintiff.

Paul R. Kach and Paul M. Higinbothom, Baltimore, Md., for General Motors Corp., defendant and third-party plaintiff.

John F. King and G. C. A. Anderson, Baltimore, Md., for Walker Mfg. Co. of Wisconsin, third-party plaintiff.

THOMSEN, Chief Judge.

This is an action for personal injuries alleged to have been sustained by the plaintiff as a result of the malfunctioning of an automobile bumper jack, which was supplied by defendant General Motors as part of the original equipment of a Buick automobile. Defendant General Motors has filed a third-party complaint against Walker Manufacturing Company of Wisconsin, which manufactured the jack and sold it to General Motors, claiming indemnity on the grounds of express warranty, implied warranty, and negligence.

Walker has moved to dismiss the third-party complaint or to quash the summons on the ground that it is a Wisconsin corporation not subject to service of process within the District of Maryland. The pivotal question is whether at the time the third-party complaint was filed Walker was doing business in Maryland within the purview of Art. 23, sec. 92(a), Ann.Code of Md. It is agreed that if Walker was doing business in Maryland service of process was properly made under Art. 23, sec. 96.

Sec. 92(a) provides:

"*Causes of action which subject corporation to suit by resident.*— Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a resident of this State or a person who has a usual place of business in this State, (1) on any cause of action arising out of such business, and (2) on any cause of action arising outside of this State."

General Motors has a usual place of business in Maryland. Walker Manufacturing Company is a Wisconsin corporation having its principal office and factory in that State. It manufactures automobile parts, including exhaust sys-

tems, filters, and jacks. Early in 1957, after the events giving rise to this suit but before the action was filed, Walker Manufacturing Company organized a wholly owned subsidiary, Walker Marketing Corp., also a Wisconsin corporation, for advertising, promoting, selling, and distributing some but not all of its products throughout the country. Counsel for third-party defendant stipulated at the hearing that the corporate veil may be pierced and the two corporations treated as one for the purpose of this motion. The two corporations will be referred to collectively herein as Walker.

At all material times Walker has employed a full time, salaried representative, Evans, to promote its sales in Maryland and the District of Columbia. Evans solicits the purchase of Walker's products by independent distributors, known as "after-market wholesalers". Twelve or fourteen distributors resell Walker's products and the products of its competitors to service stations, garages, and others, and Evans helps to promote such resale of Walker products. He also tries to straighten out service problems as they arise. Walker has no office, bank account, or telephone listing in Maryland. Evans works out of his home in Rockville, Maryland, using his own automobile. Walker's annual gross sales in Maryland average about $125,000.

Prior to April 1, 1957, all purchase orders were mailed to Racine, Wisconsin, and filled there because Walker kept no inventory in Maryland. However, on March 15, 1957, Walker contracted [1] with Fuchs Transfer Company, Inc., of Baltimore, Maryland, for the storage in Baltimore with Fuchs of certain Walker products. Under that contract, Fuchs agreed, inter alia:

"1. To provide facilities and proper space for the handling and storage of Manufacturer's products.

"2. To forward all items of merchandise at the direction of Manufacturer only to such customers as specified by it and to remit to the Manufacturer on all C.O.D. purchases within ten (10) days thereafter.

"3. To maintain adequate service for Manufacturer's customers, such service to be available eight (8) hours per day, Monday through Friday, excluding legal holidays. To provide for the processing and shipping of all merchandise ordered by customers or authorized to be shipped by the Manufacturer.

"4. To report daily to Manufacturer the movement of all merchandise shipped, forwarding to its main office at Racine, Wisconsin, copies of all delivery notices and forwarding to customer packing slip together with bill of lading."

Walker agreed, inter alia:

"4. To pay all taxes arising out of or pertaining to the sale, receipt, preservation, storage and delivery of Manufacturer's merchandise.

"5. To reimburse Custodian for postage and shipping material expenses."

Since April 1, 1957, Fuchs has received and stored Walker products as "custodian" and delivered them to the distributors for a 7% commission. Walker has neither sold nor stored any jacks in Maryland, but that fact is unimportant. Walker maintains at the Fuchs' warehouse in Baltimore an inventory worth on the average about $25,000. Parts shipped by Walker to the warehouse are consigned to Walker c/o Fuchs. Walker retains title to the materials stored in Maryland.

Evans seeks to assure prompt deliveries to distributors from either the Fuchs' warehouse in Baltimore or the Walker plant in Racine and prompt deliveries from the distributors to service stations and garages. To this end, he periodically checks on the inventory at the Fuchs' warehouse, and gets in touch with each distributor two or three times

---

1. That contract was executed by the manufacturing company. A similar contract was entered into on April 1, 1957, by the new marketing subsidiary.

a month. As need arises, distributors fill out purchase orders and pick up merchandise from the Fuchs' warehouse against such orders. Fuchs collects for Walker on C.O.D. purchases. Credit purchases are billed to the distributors from Walker's office in Wisconsin.

There is no serious dispute about the controlling law. It is set out in the following cases: Thomas v. Hudson Sales Corp., 204 Md. 450, 105 A.2d 225; Feldman v. Thew Shovel Co., 214 Md. 387, 135 A.2d 428; International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Travelers Health Ass'n v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; Kahn v. Maico Co., 4 Cir., 216 F.2d 233; Erlanger Mills v. Cohoes Fibre Mills, 4 Cir., 239 F.2d 502; Frey & Son v. Cudahy Packing Co., D.C.Md., 228 F. 209, Rose, J.; LaPorte Heinekamp Motor Co. v. Ford Motor Co., D.C.Md., 24 F.2d 861, Soper, J.; Johns v. Bay State Abrasive Products Co., D.C.Md., 89 F.Supp. 654, Chesnut, J.; Wm. Barnes Hall, Inc. v. Flintkote Company, D.C.Md., 139 F. Supp. 32.

As early as 1915, in Frey & Sons v. Cudahy Packing Co., 228 F. at page 213, Judge Rose said: "The average man, whether intelligent or unintelligent, would suppose that a concern which kept steadily on hand in Maryland perhaps $10,000 of goods to facilitate their prompt delivery to numerous customers in that and neighboring states, so soon as the company at one of its outside offices had accepted offers which it kept men busy in Maryland soliciting, was doing business in the state. Whatever may sometimes be the case, there is no occasion here to assume that the reason of the law is not a man's natural reason."

The maintenance by Walker of a substantial inventory in Maryland, and the continuous activities of its salaried employee Evans and of its custodian Fuchs

on its behalf in that state, satisfy the requirements of Art. 23, sec. 92(a) of the Maryland Code and the standards of jurisdictional due process.

This conclusion makes it unnecessary to determine whether jurisdiction over Walker in this case might also be justified by Art. 23, sec. 92(d).[2]

The motion to dismiss the third-party complaint is hereby denied.

---

2. Walker manufactured the jack involved in this action in Wisconsin, sold it to General Motors in Wisconsin or in Michigan, and delivered it to General Motors in Delaware, knowing that it would be included as part of the equipment of an automobile which might be sold or used anywhere in the United States.