KATHRYN P. SHEPARD . v. RHEEM MANUFACTURING COMPANY, PIEDMONT NATURAL GAS COMPANY, INC AND ERVIN CONSTRUCTION COMPANY, INC.

(Filed 28 January, 1959.)

1. **Judgments § 18: Process § 8d— Foreign corporation engaged in selling appliances in this State may be served under G.S. 55-145(a) (3) for injury from defective appliance.**

A foreign corporation selling home appliances to wholesalers in North Carolina is subject to service of process under G.S. 55-145(a) (3), in an action by a resident of this State to recover for personal injury allegedly resulting from a defective appliance manufactured by the foreign corporation, notwithstanding that title to appliances sold by the corporation in this State pass to the wholesalers at the point of shipment outside of this State and notwithstanding that the foreign corporation maintains no agents or employees here except agents for the solicitation of orders which are subject to approval by the home office, and service under the statute subjects the foreign corporation to a judgment *in personam*.

2. **Constitutional Law § 24—**

The constitutionality of a statute of this State authorizing service of process on foreign corporations involves a question of due process of law, Fourteenth Amendment to the United States Constitution, to be determined in accordance with the decisions of the Supreme Court of the United States.

3. **Same: Process § 8d—**

G.S. 55-145(a) (3), authorizing the service of process on a foreign corporation by service on the Secretary of State in causes of action to recover for injuries resulting from the production, manufacture or distribution of goods of such corporation consumed or used in this State, is constitutional and valid.

APPEAL by defendant Rheem Manufacturing Company from *Craven, S. J.,* at June 16, 1958 Special Term, of MECKLENBURG.

Civil action to recover for personal injury allegedly sustained as proximate result of actionable negligence of defendants in manner

stated in the complaint— duly heard upon motion of Rheem Manufacturing Company to dismiss for lack of jurisdiction over the person.

And the court, having considered the stipulation of parties, the evidence offered and the record, made the following findings of fact:

"1. This action was instituted by the issuance of a summons on September 27, 1957. At the same time proceedings in attachment were instituted against the defendant Rheem Manufacturing Company and pursuant to said proceedings a summons in garnishment was issued against Parnell-Martin Supply Company with respect to any indebtedness owed by that company to the defendant Rheem Manufacturing Company. The answer to the garnishment summons filed by Parnell-Martin Supply Company shows an indebtedness subject to said garnishment proceedings as of September 27, 1957, in the amount of $6,852.98.

"2. The action was removed to the United States District Court for the Western District of North Carolina on petition of two of the defendants but was thereafter remanded to the State Court by order of the United States District Judge.

"3. While the action was pending in the United States District Court, the defendant Rheem Manufacturing Company filed a motion to dismiss for lack of jurisdiction *in personam* and also a motion to dismiss the attachment proceedings. After remand, the defendant Rheem Manufacturing Company filed a new motion to dismiss appearing in the record in which no attack was made upon the attachment proceedings and upon the hearing in this Court on the motion to dismiss it was stated for the record by counsel for Rheem Manufacturing Company that motion to dismiss the attachment proceedings filed in the Federal Court was abandoned and that the motion to dismiss was confined to the question of jurisdiction to render a judgment *in personam*.

"4. That the original summons was returned without service as to the defendant Rheem Manufacturing Company and thereafter, while the action was pending in the United States District Court, the plaintiff caused an Alias Summons to be issued for service on the Secretary of State of North Carolina under the provisions of G.S. 55-145 and 55-146, the defendant Rheem Manufacturing Company, not having appointed an agent for service of process in this State. No question is raised as to the procedure followed in undertaking to comply with the provisions of G.S. 55-146, the question presented being confined to whether or not the facts of the case bring the case within the provisions of G.S. 55-145 and, if so, whether said statute, as applied to the facts, is unconstitutional.

"5. The defendant Rheem Manufacturing Company is a foreign

corporation and is not, and never has been, domesticated in North Carolina, is not incorporated under the laws of this State, and is not, and never has been, admitted to do business in North Carolina.

"6. At the time of the institution of this action, and for some years prior thereto, and up to the present time, Rheem Manufacturing Company has solicited orders in North Carolina for its products to be shipped in interstate commerce from manufacturing or assembling plants in other states to purchasers in North Carolina. All such sales are solicited by sales representatives who, in some, but not all, cases, reside in North Carolina. No sales representative has now, nor has had in the past, authority to enter into complete and binding contracts in North Carolina, it being the practice of the company that all sales, before becoming final, must be accepted by the regional sales office which in all cases is located outside of North Carolina.

"7. Employees of Rheem Manufacturing Company received or obtained 784 orders during the Company's last fiscal year or accounting period, for the sale, delivery, or shipment of goods, articles or products by the Company to persons or concerns in the State of North Carolina.

"8. Of the 784 orders referred to in the preceding paragraph, only one order was not accepted by the appropriate office of the Rheem Manufacturing Company, the reason for non-acceptance in that case being that the Company was unwilling to supply the merchandise ordered to the requested specifications.

"9. The average monthly dollar volume of Rheem Manufacturing Company sales of goods of all kinds to persons or concerns located in North Carolina during the Company's last fiscal year or accounting period was $140,426.16. As of September 30, 1957, Rheem Manufacturing Company had 57 customers in North Carolina consisting of wholesale purchasers of its products.

"10. Under sales practices employed by the Rheem Manufacturing Company as of the time of the institution of this action, when goods, articles and products were shipped or delivered by Rheem Manufacturing Company to customers or purchasers located in North Carolina, all shipments to North Carolina were f.o.b. plant from which shipments were made. Title to such goods passed at the plant from which shipments were made, which, in each case was outside of North Carolina.

"11. Payments for all goods sold to North Carolina customers are made by remittance through United States mail to offices of Rheem Manufacturing Company outside of North Carolina and the sales representatives do not make collections and are not authorized to receive money for the company in North Carolina.

"12. The names and addresses of all salesmen and other agents employed by Rheem Manufacturing Company, who, during the last six months of 1957, performed in the State of North Carolina any acts in furtherance of the purposes for which the Company was formed, are as follows:

Frank Landon, 4019 Sheridan Drive, Charlotte, N. C.

John Painter, 2101 Highland Street, Charlotte, N. C.

Paul Morris, 517 Parkview Drive, Spartanburg, S. C.

"13. Frank Landon is and was a salesman employed by the Container Division of Rheem Manufacturing Company. John Painter is and was a salesman employed by the Richmond Plumbing & Fixture Division of Rheem Manufacturing Company. Paul Morris is and was a salesman employed by the Home Products Division of Rheem Manufacturing Company. Each of said salesmen engages in general sales solicitation for the purpose of obtaining orders from wholesale customers in the Southeastern States in the case of Mr. Landon and Mr. Painter, and in North Carolina, South Carolina and Tennessee in the case of Mr. Morris.

"14. Approximately 60% of the activities of Frank Landon are in North Carolina. Approximately 50% of the activities of John M. Painter are in North Carolina. Approximately 65% of the activities of Paul Morris are in North Carolina.

"15. During the Company's last fiscal year or accounting period, Rheem Manufacturing Company did not make any sales to customers in North Carolina on a consignment basis.

"16. Neither Rheem Manufacturing Company nor any of its sales representatives does now maintain, nor has in the past maintained, any office or place of business in North Carolina.

"17. Rheem Manufacturing Company purchases goods from suppliers in North Carolina under sales transactions which provide for shipment f.o.b. the supplier's plant in North Carolina, at which point title to such supplies passes to Rheem Manufacturing Company. The average monthly dollar volume of such purchases of goods of all kinds from persons and concerns located in North Carolina during the company's last fiscal year or accounting period was $682.74. The average number of orders per month involving such purchases was thirty-nine. These purchases are generally made by purchase orders issued at the plant facilities of Rheem Manufacturing Company outside of North Carolina and transmitted by mail to the supplier in North Carolina. In relatively few instances representatives of the supplier visit plant facilities of Rheem Manufacturing Company outside of North Carolina and secure purchase orders on the occasions of such visits. Under no circumstances do employees of Rheem Manufacturing Company

make agreements of purchase in North Carolina for such supplies.

"18. On September 30, 1957, the total amount of indebtedness owed to Rheem Manufacturing Company by persons or concerns located in North Carolina was $247,099.38. Rheem Manufacturing Company did not have any interest in any tangible property located in the State of North Carolina during September 1957, except price sheets, specification sheets and sales promotion literature such as is normally carried by salesmen. The only property which Rheem Manufacturing Company owned, or in which it had an interest in North Carolina, at any time, consisted of the indebtedness due from its North Carolina customers, goods in transit purchased from North Carolina suppliers as outlined in Finding No. 17 above, and price sheets, specification sheets and sales promotional literature, such as is normally carried by salesmen.

"19. Rheem Manufacturing Company has now, and had at the time of the institution of this action, and at all times alleged in the complaint, no employee situated in North Carolina except the sales representatives specifically named in other findings of fact."

And upon the foregoing findings of fact and upon the record, the court made the following conclusions of law:

"1. Service of process was had upon the defendant Rheem Manufacturing Company in this case in full compliance with the procedural requirements of G.S. 55-146, as authorized by G.S. 55-145 (c).

"2. The cause of action stated in the complaint against Rheem Manufacturing Company arises out of a transaction which falls within the terms of G.S. 55-145 (a) (3), and accordingly, the service which was had in this case under G.S. 55-146 brought the defendant Rheem Manufacturing Company within the jurisdiction of this Court for purposes of an *in personam* judgment.

"3. The activities which the Rheem Manufacturing Company has carried on in this State through its employees and agents have been throughout the period in question, regular, systematic and continuous and have resulted in a large volume of interstate business between said Company and persons and concerns in this State.

"4. The cause of action stated in the complaint against Rheem Manufacturing Company arises out of the activities of the said Company referred to in the preceding paragraph.

"5. The activities of the Rheem Manufacturing Company carried on in North Carolina as above stated establish such direct, substantial and uninterrupted contacts by that Company with this State as to make it reasonable and just for this Court to exercise its jurisdiction over said Company in this case as authorized by G.S. 55-145 and 146.

. "6. Under all of the facts contained in the record before this Court, no right of the Rheem Manufacturing Company under the 14th Amendment of the United States Constitution or under Article I, Section 17 of the North Carolina Constitution will be violated by this court's exercise of the jurisdiction conferred upon it by G.S. 55-145 over said Company."

Therefore the court "ordered, adjudged and decreed" that the special appearance and motion to dismiss filed herein by defendant Rheem Manufacturing Company be, and it is hereby overruled, and defendant is allowed specified time within which to file answer or otherwise plead.

To the signing and entering of the foregoing order, the defendant Rheem Manufacturing Company objects and excepts, and appeals to the Supreme Court, assigning error.

*Blakeney and Alexander, Ernest W. Machen, Jr., Payne and Hedrick for plaintiff, appellee.*

*Robinson, Jones & Hewson for defendant, appellant.*

WINBORNE, C. J. Appellant states this as the question involved on this appeal: "Upon the facts found by the Superior Court Judge, did the court err in holding that the defendant Rheem Manufacturing Company is subject to *in personam* jurisdiction of the court?"

And it is stated in appellant's brief filed in this Court that "the primary errors complained of consist in reaching the wrong legal result upon findings of fact to which no exception is taken."

In this connection it is provided by statute in this State, G.S. 55-145, in respect to jurisdiction over foreign corporations, not transacting business in this State, that:

"(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State, or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State or whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising * * * (3) out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that these goods are to be used or consumed in this State and are so used, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers * * * ."

Applying the provisions of this statute, G.S. 55-145, (a) (3), to the facts found by the court, it seems clear that the Legislature in

enacting the statute had in mind just such situation as that involved here. For as is succinctly stated by appellee in her brief, "The plaintiff is a resident of this State, and the appellant is a foreign corporation engaged in manufacturing, producing, and assembling gas water heaters and various other appliances for use in the home. Through the efforts of its agents residing and working in the State, the appellant ships large quantities of these appliances to North Carolina with the reasonable expectation that they will be installed and used in the homes of the people of this State, and they are so used. The acts of negligence upon which the plaintiff bases her cause were committed by the appellant in the course of this very activity, that is, her injuries came about through the negligence of the appellant in manufacturing and producing a defective gas water heater and in causing it to be shipped into this State where it was installed and used in the plaintiff's home until, by reason of the defect, the gas explosion occurred," inflicting upon her serious personal injury.

Manifestly, therefore, upon the undisputed facts, the cause of action arises out of activities described in G.S. 55-145 (a) (3). Thus the court had authority, so far as the provisions of the statute are concerned, to assert jurisdiction over the person of Rheem Manufacturing Company in the case.

Now as to the constitutionality of the statute, G.S. 55-145 (a) (3), decisions of the Supreme Court of the United States are controlling. And in this connection the decision of that court in the case of *International Shoe Company v. Washington*, 326 U. S. 310, 90 L. Ed. 95, 161 A.L.R. 1057, is pertinent and decisive of the question here involved.

We find it stated there: "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their *de facto* power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'," citing cases.

Attention has been called to the cases of *Putnam v. Publications,* 245 N.C. 432, 96 S.E. 2d, 445, and *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F. (2d) 502, in which upon the facts of each particular case, the statute G.S. 55-38 (a) (3) identical with present

statute 55-145 (a) (3) was held unconstitutional. It is sufficient to say these cases are distinguishable in factual situation from the case in hand.

In the light of the facts in instant case the statute G.S. 55-145 (a) (3) is not found to be violative of any provision of the Constitution of the State of North Carolina.

Hence the judgment from which appeal is here taken is hereby
Affirmed.