352 So.2d 130 (1977)
JACK PICKARD DODGE, INC., a Corporation, Appellant,
v.
Ella Mae YARBROUGH, C.F. Yarbrough, Her Husband, Chrysler Motor Corporation, a Corporation and Powell Chrysler Plymouth, Inc., a Florida Corporation, Appellees.
No. GG-403.
District Court of Appeal of Florida, First District.
November 21, 1977.
*131 Robert L. Cowles and James R. Barfield of Cowles, Coker & Myers, Jacksonville, for appellant.
Charles Cook Howell, III of Howell, Howell, Liles & Braddock, Jacksonville, for appellees.
ERVIN, Judge.
This is an interlocutory appeal from an order denying motions to quash or dismiss for lack of personal jurisdiction. Appellee Ella Mae Yarbrough filed a complaint in Duval County, Florida, alleging negligence on the part of Chrysler Corporation and the local Jacksonville dealership in the manufacture and servicing of her automobile. Chrysler filed a third party complaint against appellant Jack Pickard Dodge, Inc., a North Carolina dealer. Chrysler alleged a recall notice was issued to all dealers, advising them of the possibility of defective parts in certain models which could fail, resulting in loss of vehicle control. The Chrysler directive stated corrections should be promptly made. It was this work that was done by Jack Pickard, allegedly in a negligent manner. The car in question, at the time of the servicing, was under lease to Avis Rent-A-Car. It was sold at auction in Florida and eventually sold to the Yarbroughs by the Jacksonville dealer. Pickard has no nexus with Florida, other than the servicing of a car that eventually was sold to a Florida resident and then caused injury in Florida.
Jack Pickard argues Section 48.193, Florida Statutes (1975) is unconstitutional as applied here. That section  the Florida long-arm statute  reads in part:
"(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
* * * * * *
(b) Commits a tortious act within this state.
* * * * * *
(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury either:
1. The defendant was engaged in solicitation or service activities within this state which resulted in such injury; or

*132 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and the use or consumption resulted in the injury."
Jack Pickard admits it comes within the scope of (1)(f)2 which permits process upon a defendant who services a product used within this state, with resulting injury to the user. This court recently construed the long-arm statute section in Dunn v. The Upjohn Company, 350 So.2d 127 (Fla. 1st DCA 1977). There plaintiff brought a wrongful death action against a drug manufacturer and the Thomas County, Georgia pharmacist who sold the prescription drug to the decedent. Suit was filed in Leon County. We held "a pharmacist who fills a prescription in a foreign state and delivers it to the recipient in that state cannot reasonably be said to have purposefully availed himself of the privilege of conducting activities within the foreign state thus invoking the benefits and protections of the forum state's laws." (Emphasis in original.) (350 So.2d, p. 129.) The pharmacist was found not to have the requisite contacts with the State of Florida to satisfy due process requirements of International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
In International Shoe, a foreign corporation employed salesmen within the state of Washington to solicit orders from prospective buyers. The salesmen took orders and transmitted them to company headquarters, where the orders were approved and shipped F.O.B. from points outside Washington. No salesman had authority to enter into contracts or to make collections. All salesmen were paid by commission. The question was whether the foreign corporation was subject to suit by the state for the collection of unemployment compensation taxes. As we noted in Dunn, the presence of a defendant within the territorial jurisdiction of a court was historically a prerequisite to the rendition of a judgment personally binding him. But with the advent of personal service of summons, a defendant need not be present within the territory of the forum but need only have certain minimal contacts "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. The Supreme Court found sufficient activity by the foreign corporation within the state of Washington to determine that due process requirements of minimal contacts were satisfied. The Court could not prescribe, however, a simple formula, saying:
"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative... . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or a corporate defendant with which the state has no contact, ties, or relations." International Shoe at 319, 66 S.Ct. at 159.
Hanson v. Denckla, supra, considered the amenability of a Delaware trust company to suit in Florida. The company was trustee of certain securities for a woman who executed her revocable deed of trust in Delaware. She subsequently moved to Florida, where she executed her will and an inter vivos instrument distributing a portion of the trust. An action was brought in Florida for a declaratory judgment to determine what property passed under the residuary clause of her will. The Delaware trust company was served in Florida by publication. The Florida Supreme Court held the trust and power of appointment executed in Delaware were ineffective under Florida law, but the United States Supreme Court reversed, holding Florida lacked in rem or in personam jurisdiction *133 over the Delaware trust company. In discussing personal jurisdiction, the Supreme Court found no contacts at all between the company and Florida. The company had no office in Florida and transacted or solicited no business either in person or by mail. The Court found "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id., 357 U.S. at page 253, 78 S.Ct. at page 1240.
Not raised in our opinion in Dunn, nor specifically ruled upon, was the constitutionality of the long-arm statute as applied. Here we find it violates "traditional notions of fair play and substantial justice" for a local North Carolina dealer to defend a law suit in Florida when its only connection with Florida is the servicing of an automobile which eventually is possessed by the plaintiffs. There is no allegation Jack Pickard operates, conducts, engages in or carries on any business in the state of Florida. Nor does it have an office or agency in the state or own any real property. Our holding in Dunn and the analysis in Hanson v. Denckla, supra, requires reversal on this point.[1]
Chrysler, however, argues Jack Pickard comes not only within (1)(f)2, but also within (1)(b)  allowing suit against a non-resident who "commits a tortious act within this state." Chrysler argues since the injury took place in Florida, the cause of action has accrued in Florida. Two recent Fifth Circuit Court of Appeals cases construing the Florida long-arm statute seem to support such reasoning. In Rebozo v. Washington Post Co., 515 F.2d 1208 (5th Cir.1975), the Washington Post Newspaper published an allegedly libelous article about the plaintiff. The records showed an average of 600 newspapers a day were circulated in Florida. The Fifth Circuit wrote:
"The [Post] contends the alleged libel in this case occurred in Washington, D.C. and that the `tortious act' section of the long arm statute contemplates only a situation in which an act in Florida causes injury in Florida. The district court, on the other hand, construed the statute broadly to include not only that set of events but also the situation in which a foreign tortious act causes injury within the forum. See generally, Buckley v. New York Post Corporation, 373 F.2d 175, 178-9 (2d Cir.1967). Since we agree with the district court that the Florida courts would construe section 48.193(1)(b) to allow the assertion of jurisdiction over the Company for an alleged libel published in `The Washington Post' and circulated in Florida, it is unnecessary for jurisdictional purposes to discuss the Company's contention that the libel occurred in Washington, D.C." 515 F.2d at 1211-1212.
In Bangor Punta Operations v. Universal Marine, 543 F.2d 1107 (5th Cir.1976), the defendant was accused of taking the plaintiff's designs and specifications for its trawlers and representing them as the defendant's own. The defendant also sent into Florida an advertisement containing a photograph of the plaintiff's trawler, but represented it as the photograph of the defendant's. The defendant's yachts, built in violation of the plaintiff's property rights, were sent into Florida for sale. The Fifth Circuit Court relied on its earlier opinion in Rebozo and found where a foreign tortious act causes injury in Florida, personal jurisdiction in Florida can be had. The court held:
"In this case, the importation of the cheaper and inferior boats, built by the unauthorized use of the plaintiff's design specifications and plans yet costing approximately $20,000.00 less per vessel, caused the plaintiff's business to be damaged in terms of lost sales, and damage to reputation, as the plaintiff alleged and the jury undoubtedly concluded. Since injury as a consequence of the defendant's *134 acts occurred within the State of Florida, we are not called upon and do not decide the precise locality of the tortious acts giving rise to the injurious consequences which occurred." 543 F.2d at 1109.
Both federal cases involved a foreign defendant and injury in Florida. Both cases found personal jurisdiction appropriate. Nevertheless here the clear wording of Section 48.193(1)(b)  the commission of "a tortious act within this state"  requires a different result. Jack Pickard has committed no act in Florida, tortious or otherwise. The fact the injury occurred in Florida is crucial to a determination when the cause of action accrued, but the occurrence of the injury alone in the forum state does not satisfy the statutory test. In both Rebozo and Bangor Punta, the defendants committed an affirmative wrongful act within the forum. The newspaper sold copies of the libelous article. The defendant boat manufacturer solicited customers for its fraudulently designed yachts. The Fifth Circuit's interpretation of the "tortious act" section would lead to an overbroad application. Any foreign tortfeasor who causes an injury in Florida, regardless how remote in time or place, would be subject to suit in Florida because jurisdiction on the basis of a single tort has been uniformly upheld against constitutional attack. Rebozo at 1214. Such a holding however ignores the admonition in Hanson that application of the minimal contacts doctrine "will vary with the quality and nature of the defendant's activity... ." 357 U.S. at 253, 78 S.Ct. at 1240.
In conclusion, we hold Section 48.193(1)(f)2 is unconstitutional in its application to the circumstances of this case. We further hold (1)(b) of that section may not be so broadly construed as to apply here. The interlocutory order finding personal jurisdiction over Jack Pickard Dodge, Inc. is
REVERSED.
McCORD, C.J., and MILLS, J., concur.
NOTES
[1] We are aware of conflicting decisions in other jurisdictions, involving the servicing of vehicles by out of state dealers. Compare, for example, Kerrigan v. Clarke Gravely Corp., 71 F.R.D. 480 (M.D.Pa. 1975) and Reilly v. Phil Tolkan Pontiac, Inc., 372 F. Supp. 1205 (D.N.J. 1974).