LUMBER MART, INC., Plaintiff
and Appellant,

v.

HAAS INTERNATIONAL SALES AND
SERVICE, INC., and Ross Bros. Trans-
portation, Inc., Defendants and Appel-
lees.

Civ. No. 9440.

Supreme Court of North Dakota.

July 13, 1978.

Zuger & Bucklin, Bismarck, for plaintiff and appellant; argued by Robert V. Bolinske, Bismarck.

Chapman & Chapman, Bismarck, for defendants and appellees; argued by Charles L. Chapman, Bismarck.

SAND, Justice.

The appellant, Lumber Mart, Inc., of Mandan, appealed from a Burleigh County district court order dismissing its suit for damages against defendant-appellees, Haas International Sales and Service, Inc., of Bismarck, and Ross Bros. Transportation, Inc., Circle, Montana, for lack of jurisdiction under either Rule 4, North Dakota Rules of Civil Procedure, or under constitutional notions of justice, fair play or due process.

Lumber Mart had filed a suit in Burleigh County district court against Haas International Sales and Service, a North Dakota corporation [hereinafter Haas], and Ross Bros. Transportation, Inc., a Montana corporation [hereinafter Ross Bros.], alleging that their negligence, both separately and concurrently, in repairing Lumber Mart's diesel tractor caused damages to Lumber Mart estimated at approximately $17,-000.00.. The complaint can be characterized as sounding in contract and tort (in the broad concept).

Ross Bros. responded by moving to change venue of the action from Burleigh County to McCone County, Montana, and to dismiss the action in Burleigh County for lack of jurisdiction. Ross Bros., which operated it own truck line and was registered with the North Dakota highway department truck regulatory division argued that any alleged acts or omissions on its part occurred at its garage in Circle, McCone County, Montana.

The trial court granted the motion and dismissed the complaint without prejudice to Lumber Mart. In doing so, the court made the following conclusions of law:

"I.

"That the situs of the facts and circumstances alleged in this case is the state of Montana.

"II.

"That any cause of action accruing to the Plaintiff as a result of this transaction sounds in contract, and not in tort.

"III.

"That insufficient contacts with the state of North Dakota have been alleged and shown, as would justify the jurisdiction of this Court under Rule 4, North Dakota Rules of Civil Procedure, or under constitutional notions of justice, fair play or due process."

On appeal to this Court, Lumber Mart argued that the trial court erred as a matter of law in determining that it did not have jurisdiction under North Dakota's long arm provision, as outlined in Rule 4, N.D.R. Civ.P., over the Montana corporation of Ross Bros. In determining whether or not the trial court erred in dismissing this action for lack of personal jurisdiction over Ross Bros. we find it necessary to review Ross Bros.' contacts in North Dakota with Lumber Mart.

The diesel tractor alleged to have been negligently repaired by both Ross Bros. and Haas was used by Lumber Mart in connection with its business. In August 1976 the tractor's engine was given an overhauling by Haas. During its first trip after the overhaul the tractor was found to be in need of repairs after its engine lost oil pressure near Circle, Montana. The tractor was then taken to Ross Bros. in Circle, Montana, where it was repaired for a fuel leak.

Following the repairs and the return trip to Bismarck, Lumber Mart took the tractor to Haas and informed its manager of the repair work by Ross Bros., and, according to Lumber Mart, Haas agreed to repair the engine if any further trouble developed.

In January 1977 the tractor developed a water leak and was taken to Haas for repair, but, according to Lumber Mart, Hass "negligently failed to discover a damaged water hose and instead only tightened a hose clamp" because later in January, when Lumber Mart was using the vehicle on a haul to Montana, it was noticed that the

heat gauge indicated a malfunction outside of Circle. The diesel tractor failed and was then towed to Ross Bros., where the engine was taken apart and repaired. Lumber Mart alleged that the damaged water hose, which Haas should have detected but did not detect earlier, had failed.

After Ross Bros. repaired the engine, including the water hose, a Lumber Mart employee picked up the tractor, and on the return trip the vehicle broke down near Dickinson. It was towed to Cummins Diesel Repair Shop in Dickinson. At this point, Ed Breckel, manager and part-owner of Lumber Mart, telephoned Gene Ross, president of Ross Bros., to advise him of the breakdown.

The engine was taken apart at Cummins Diesel Repair Shop (Dickinson) and it was discovered that the engine was seriously damaged. Ross then agreed to pick up the truck at Dickinson and return it to Circle, Montana, for repairs. An employee of Ross Bros. traveled to Dickinson and towed the truck back to Circle, where it was repaired at Ross Bros. garage. It is not claimed or alleged that this final repair by Ross Bros. was performed in a negligent or unworkmanlike manner.

According to Lumber Mart, approximately 14 telephone calls were exchanged between Ross Bros., in Circle, Montana, and Lumber Mart in Mandan during the course of repair efforts, with approximately seven of those calls initiated by Ross Bros. personnel.

Following the completion of repairs to the diesel tractor, Gene Ross, president of Ross Bros., delivered the vehicle from Circle, Montana, to Lumber Mart in Mandan. Ross, while in Mandan, engaged in settlement negotiations with Breckel, of Lumber Mart. It was agreed that Lumber Mart would pay Ross Bros. $2,000 to obtain the release of the truck, although at the same time Lumber Mart insisted that the cost of repairs was the fault of defendants Ross Bros. and Haas.

Lumber Mart contends that the State has general jurisdiction over Ross Bros. on the basis that Ross Bros. was engaged in interstate commerce by picking up potatoes in the eastern part of North Dakota and transporting them to Montana, and by registering with the truck regulatory division of the highway department and purchasing permits for each trip.

Lumber Mart further contends that if the State does not have general jurisdiction, then it has personal jurisdiction over Ross Bros. because of the interstate commerce activity and other contacts, such as telephone calls and personal visits by an officer or agent of Ross Bros. in North Dakota with Lumber Mart, in an effort to resolve the dispute that arose as a result of Lumber Mart's claim that Ross Bros. negligently repaired the tractor which created the problem, and also because Ross Bros. came to North Dakota to return Lumber Mart's disabled truck to Montana for further repair. (This final repair, however, was not alleged to have been done in a negligent manner and is not involved in the cause of action here.)

An elaborate history of the long arm provisions (statutes and rules) of this State is set out in *Hebron Brick Co. v. Robinson Brick & Tile Co.*, 234 N.W.2d 250 (N.D. 1975). The commentary to Rule 4, N.D.R. Civ.P., as prepared by Leonard Bucklin, states that most of "the 'long-arm' provisions of the rule were added in 1971" and "were taken from the Uniform Interstate International Procedure Act." Other amendments have been adopted but they are not significant to this case. However, in comparing Rule 4(b)(2)(C) of the North Dakota Rules of Civil Procedure with § 1.03 of the Uniform Interstate International Procedure Act we do not find a similar provision. The provision of the Uniform Interstate International Procedure Act which comes close is § 1.03(a)(4), which provides:

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's

.          .          .          .          .

(4) causing tortious injury in this state by an act or omission outside this state *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from the goods used or consumed or services rendered, in this state  .   .  . .*"

[Emphasis added.]

whereas Rule 4(b)(2)(C) of the North Dakota Rules of Civil Procedure provides that:

"A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent, as to any claim for relief arising from the person's

.   .   .   .   .

(C) committing a tort within or without this state causing injury to another person or property within this state  .   .  . ."

The proviso, "if he regularly does or solicits business" etc., as found in § 1.03(a)(4) of the Uniform Interstate International Procedure Act is not a part of North Dakota Rule 4(b)(2)(C).

In *Hebron Brick Co., supra,* after noting that Rule 4 of the North Dakota Rules of Civil Procedure has its roots in the Michigan statutes, and after reviewing Michigan case law, we said:

"Both [Michigan statute and North Dakota Rule 4] were designed to permit the state courts to exercise personal jurisdiction to the fullest extent permitted by due process.  .   .   .   All that is required under Rule 4(b), N.D.R.Civ.P., is that the nonresident defendant have sufficient minimal contacts with North Dakota to permit our courts to exercise personal jurisdiction without offending the basic requirements of due process."

In resolving the question whether or not the State has jurisdiction over the defendant we must determine if the conditions of any one of the subdivisions of Rule 4(b)(2), N.D.R.Civ.P., have been satisfied. The subdivisions contended by Lumber Mart that may apply are:

"(A) transacting any business in this state;

"(B) contracting to supply or supplying service, goods, or other things in this state;

"(C) committing a tort within or without the state causing injury to another person or property within this state;

"(H) enjoying any other status or capacity within this state, including cohabitation, or engaging in any other activity having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play or the due process of law."

Even if we can judicially determine that the facts may fit and satisfy one or more of the foregoing subdivisions of the Rule, it will still be necessary to determine whether or not due process and constitutional safeguards will be afforded the nonresident defendant under the facts of this case.

We therefore believe that it would be helpful to first examine the controlling case law on the due process and related questions.

In *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1954), the Supreme Court held "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  The Supreme Court said:

"It is evident that the criteria  .   .   . cannot be simply mechanical or quantitative.  .   .   .   Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."

This clearly illustrates that each case must be determined on its own set of facts and circumstances.

In *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court considered an action involving a life insurance policy sold to a California resident by an Arizona-based corporation which was taken over by a Texas corporation and which failed to pay benefits upon the death of the insured, whereupon an action was successfully brought in California. The Court, in upholding the judgment, said:

"It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State [California]. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of the State when he died."

The Court observed that the California residents would have been at a severe disadvantage if they were forced to follow the insurance company to a distant state in order to hold it legally accountable under its policy.

In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the United States Supreme Court said:

"It [the State] does not acquire that [personal] jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law."

In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), after reviewing some of the discussions and holdings in *International Shoe, supra*, the Court said:

"Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of Pennoyer rest became the central concern of the inquiry into personal jurisdiction."

*Shaffer* also reaffirmed the proposition that the State does not acquire jurisdiction by being the center of gravity of the controversy or the most convenient location for litigation.[1]

In the case of *Cornelison v. Chaney*, 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976), the court considered the question of personal jurisdiction in a situation where a California resident brought an action against a Nebraska resident defendant, an interstate trucker, under a California license, who had been engaged in a continuous course of conduct that brought him into the State of California almost twice a month for a period of seven years, during which time the defendant brought goods into the State for local manufacture and intended to receive merchandise in California to be delivered elsewhere. The accident occurred in Nevada near the California border. The court concluded that the defendant's activities in California were not so substantial or wide-ranging as to justify general jurisdiction over him to adjudicate all matters regardless of their relevancy to the cause of action alleged by the plaintiff. The court also stated:

"In our view, these contacts are not sufficient to justify the exercise of jurisdiction over defendant without regard to whether plaintiff's cause of action is relevant to California activity."

The court nevertheless concluded that the State of California has personal jurisdiction on the basis that "The accident arose out of the driving of the truck, the very activity which was the essential basis of the defendant's contacts with this state." The court said, "These factors demonstrate in our view a substantial nexus between plaintiff's cause of action and defendant's activities in California."

The decision was by a divided court. The decision, however, is of interest to the instant case because both the majority and minority opinions concluded that the defendant's interstate transportation activities within the State of California, and having a license from the State of California to haul freight, did not constitute activities within California sufficient so as to subject

---

1. There is an excellent discussion entitled *Reflections on Shaffer v. Heitner* in 5 Hastings Constitutional Law Quarterly, Winter 1978, p. 15.

him (Nebraska resident) to California's general jurisdiction.

▌ The decision of the court in the *Cornelison* case can be characterized as employing convenience of the plaintiff, with relatively little or no inconvenience to the defendant, as the basis for lodging jurisdiction in the State of California. However, in this respect we observe that convenience is treated substantially different in North Dakota. Rule 4(b)(5), N.D.R.Civ.P., "Inconvenient Forum," provides:

"If the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any condition that may be just."

Under the North Dakota provision, if jurisdiction is found to exist the court could determine that the action be heard in another forum and dismiss the action in this State in the interest of substantial justice because of inconvenience to the parties.

It is interesting to note that in *Marra v. Shea*, 321 F.Supp. 1140 (N.D.Cal.1971), prior to *Cornelison*, the court said that:

"Plaintiffs' argument that California is the most convenient forum from the point of view of witnesses, evidence, and several of the parties is not persuasive."

The doctrine expressed in *Marra, supra*, was approved by this Court in *Jahner v. Jacob*, 252 N.W.2d 1 (N.D.1977).

In *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211 (8th Cir. 1977), the court said:

". . . we think the ultimate test is whether the defendant [nonresident], either as a seller or buyer, has performed 'some act by which [it has] purposely [availed] itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws.' *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *See Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886 (1st Cir. 1977); *Whit-*

*taker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1973)."

In *Toro Company and Toro Sales Company v. Ballas Liquidating Company, Weed Eater, Inc., and H. Spencer Stone Associates, Inc.*, 572 F.2d 1267 (8th Cir. 1978), the court, relying upon *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206 (8th Cir. 1977), said:

"Only recently, we again rejected an argument that jurisdictional significance should be attached to a foreign corporation's forum activities which were unrelated to the cause of action."

In *Toro Company and Toro Sales, supra*, the court said:

"This court has considered five factors as being especially significant in characterizing that relationship in a given situation: (1) the quantity of the defendant's contacts with the forum state, (2) the nature and quality of those contacts, (3) the relationship between the cause of action and the contacts, (4) the interest of the state in providing a forum for the litigation, and (5) the convenience of the parties. *See Aaron Ferer & Sons v. American Compressed Steel Co.*, 564 F.2d 1206, 1209 (8th Cir. 1977) and cases cited therein."

The court continued by saying:

"Just as frequently, we have stressed that application of these factors does not provide a slide rule by which fundamental fairness can be ascertained with mathematical precision. For instance, we have said that the first three of the factors listed are of 'primary' concern in deciding whether jurisdiction may reasonably be asserted, and that the last two are of only 'secondary' importance. *See, e. g., Gardner Engineering Co. v. Page Engineering Co.*, 484 F.2d 27, 31 (8th Cir. 1973); *Thompson v. Ecological Science Corp.*, 421 F.2d 467, 469 (8th Cir. 1970)."

▌ After considering the constitutional principle of law announced in the foregoing cases,[2] we conclude that unless the contacts

---

**2.** See also, *Kulko v. Superior Court of California in and for the City and County of San Francisco (Sharon Kulko Horn, Real Party in*

*Interest)*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 and cases cited therein.

in the forum state are of such scope, nature and sufficiency as to give the forum state general jurisdiction, the nonresident party must have made minimal contacts in the forum state which are directly related to and connected with the cause of action involved to permit the forum state to acquire personal jurisdiction of the nonresident party. We construe subdivisions (b)(1) and (b)(3) of Rule 4 of the North Dakota Rules of Civil Procedure to be in harmony with these constitutional concepts. If we could not do this the constitutional principles would, in any event, prevail and the rule would be subordinate to those concepts.

The constitutional principles with which we are concerned here are not to be construed or applied liberally in favor of one party or the other, as some provisions of law are.

■ We must apply and construe the constitutional safeguards no stricter or more liberally for a North Dakota resident than a court of another jurisdiction would apply them toward its resident party alleging that a North Dakota repair shop negligently repaired the automobile being driven through North Dakota and which later broke down in the party's own state.[3] These principles are to be applied in accordance with the traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1954).

We now consider the facts of this case in light of the provisions of Rule 4, North Dakota Rules of Civil Procedure, and the foregoing principles of law.

The facts that we will consider have been stated earlier herein and are those alleged in the complaint and set out in the affidavit in opposition to the motion to dismiss. Rule 12(b), N.D.R.Civ.P.

■ Ross Bros.' transaction of business in this State consisted solely of the interstate commerce activity which was not related to the cause of action involved here. The registration with the North Dakota highway department truck regulatory division and the purchasing of a trip permit from it did not constitute contact with this State so as to give it general jurisdiction over Ross Bros. in accordance with the principles set out in *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976), and *Aaron Ferer & Sons Co. v. Atlas Scrap Iron,* 558 F.2d 450 (8th Cir. 1977). Even if we were to apply the ultimate holding in *Cornelison,* the facts in the instant case would still not bring it within that holding because the interstate transportation activity and the registration with the North Dakota highway department truck regulatory division and the purchasing of trip permits from such division each time it used the highways were not involved or directly related to the repair service in Montana which allegedly gave rise to the cause of action. However, as to Rule 4(b)(2)(A), N.D.R.Civ.P., the foregoing contacts were not involved with nor were they contacts giving rise to the alleged cause of action so as to bring about personal jurisdiction.

In *Hebron Brick, supra,* the defendant nonresident Robinson Brick & Tile Co. had furnished Hebron Brick Co., the North Dakota plaintiff, with samples so that representatives of Hebron Brick could show them to prospective customers in North Dakota. An employee of Hebron Brick, by telephone, placed an order for brick chosen from the samples for a Bismarck resident for use in construction of a house. Robinson Brick Co. made arrangements for the shipment of bricks ordered. We said:

> "Robco [Robinson Brick & Tile Co.] purposely and knowingly supplied Hebron Brick with a sample case of brick, held

---

**3.** If plaintiff's contention were accepted, a New York resident traveling through North Dakota by car, developed car trouble, had it repaired at a service station or garage, and the car later malfunctioned in his home state (New York), whereupon he initiated a civil action alleging negligence, the North Dakota service station or garage would be required to defend an action in New York. This would offend the traditional notions of fair play and substantial justice.

itself out as willing to sell those products for use in North Dakota and by its actions can be said to have encouraged Hebron Brick, and apparently other dealers as well, to solicit and place orders from North Dakota residents for Robco products." *Hebron Brick Co. v. Robinson Brick & Tile Co.*, 234 N.W.2d 250, 257 (N.D.1975).

The contacts in the State of North Dakota in the *Hebron Brick* case were directly involved with the transactions which served as the basis for the cause of action, whereas in the instant case the contacts had by Ross Bros. with Lumber Mart in this State all resulted out of the repair job in Circle, Montana, and were primarily for the purpose of attempting to resolve the dispute that had arisen. These contacts were after the facts giving rise to the cause of action. They were not directly related to the cause of action and do not constitute contacts for purposes of establishing jurisdiction as indicated in *International Shoe, Denckla,* and *Shaffer, supra.* These contacts were solely to correct alleged defective and negligent workmanship. Should we adopt a rule of law which penalizes a person for attempting to settle a dispute? We think not. Usually any effort to reach a settlement in a dispute is generally not admissible in an action for damages. Rule 408, North Dakota Rules of Evidence; *Larson v. Quanrud, Brink & Reibold*, 78 N.D. 70, 47 N.W.2d 743 (1951). Neither should it constitute grounds for jurisdiction, in the setting of this case where the contacts after the fact did not give rise to separate or independent cause of action.

Contacts consisting merely of long distance telephone calls have been held as not satisfying the minimal constitutional contacts requirements for due process. *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26 (7th Cir. 1976); *American Steel, Inc. v. Cascade Steel Rolling Mills*, 425 F.Supp. 301 (S.D.Tex.1975); *Friberg v. Schlenske*, 396 F.Supp. 124 (D.Mont.1975); and *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307 (D.Kan.1969).

A case of interest is *Jack Pickard Dodge, Inc. v. Yarbrough*, 352 So.2d 130 (Dist.Ct. App.Fla.1977), in which the court had under consideration the long arm provision of Florida, which provided:

"(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury either:

. . . . .

2. Products, materials, or things processed, *serviced, or manufactured* by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and the use or consumption resulted in the injury."

It was admitted that the facts came within the above quoted provision. The facts basically involved an action against an automobile manufacturer which filed a third-party complaint against an out-of-state automobile dealer on the theory that the work done by such dealership in correcting defects was done in a negligent manner. The court held that the rule requiring the out-of-state dealer to respond to an action was unconstitutional as applied in that case.

The generally accepted universal rule is that if a statute is to be construed in a manner so that it may be subject to more than one construction, and one would render it unconstitutional, it will be construed so that the statute is valid.

With this concept in mind, we apply the facts to our long arm provisions under Rule 4(b)(2), N.D.R.Civ.P.

We conclude that the Ross Bros.' activities do not fall within the concept of Rule 4(b)(2)(A), N.D.R.Civ.P.

On the same facts, we also conclude that the facts do not establish a basis for invoking the provisions of Rule 4(b)(2)(B), N.D. Civ.P.

The fact that Ross Bros. hauls potatoes from eastern North Dakota through the State and that it has substantial business with Mr. Bohlman, who maintains a place of business in Dickinson, as stated in the

affidavit in opposition to the motion to dismiss, does not alter this conclusion.

We now consider whether or not the remaining alternative to Rule 4(b)(2)(C), N.D.R.Civ.P., may apply, which pertains to a tort committed without the State causing an injury to person or property within the State.

The facts enumerated earlier herein clearly illustrate that the interstate transportation minimal contacts had in the state of North Dakota by Ross Bros. were in no way involved with the services performed by Ross Bros. in Circle, Montana, and therefore do not relate in any manner to the cause of action involved here. The contacts later by telephone and personal appearance which stem from the alleged negligent workmanship in Circle, Montana, were after the alleged negligence and as such could not have contributed to the legal cause of action. We would perform a disservice to justice to hold that such contacts constitute a basis for personal jurisdiction.

We conclude that the facts as stated above do not constitute minimal contact so as to give the state of North Dakota personal jurisdiction over Ross Bros., and that as a result the requirements of Rule 4(b)(2)(H), N.D.R.Civ.P. which include the basic constitutional minimum requirements, have not been met. Consequently, it will not be necessary to determine specifically if the requirements of Rule 4(b)(2)(C), N.D.R. Civ.P., have been satisfied.

We reach this conclusion even though a tort (in the broad concept) may have been committed so as to satisfy the provisions of Rule 4(b)(2)(C) because, as we have said earlier, it is not enough to merely satisfy the conditions of the Rule, but in addition the constitutional due process requirements must be met.

The trial court's order of dismissal without prejudice is affirmed.

ERICKSTAD, C. J., and PAULSON, J., concur.

VOGEL, Justice, dissenting.

I respectfully dissent. I have no particular quarrel with the statement of the facts or with the law as determined in the cases cited. My dissent centers upon conclusions drawn by the majority from the facts and statements as to the law which are unsupported by any citation of authority. I would hold that the North Dakota courts have jurisdiction over Ross Bros. under Rule 4(b)(2)(A), (B), (C), and (H), N.D.R. Civ.P.

I disagree with the statements in the majority opinion that the contacts of Ross Bros. and Lumber Mart "were after the fact [and cannot] constitute contacts for purposes of establishing jurisdiction" and that "The contacts later by telephone and personal appearance which stem from the alleged negligent workmanship in Circle, Montana, were after the alleged negligence and as such could not have contributed to the legal cause of action." No authority is cited for these statements, and I have found no authority for the proposition that the basis for the long-arm jurisdiction must antedate the injury caused by the tort or antedate the damage caused by the contract violation upon which the action in question is based. So far as I can tell, the rule is that any status or conduct which brings the defendant within the terms of the long-arm statute as of the time of commencement of the action is sufficient.

Many cases have held that jurisdiction may be obtained over a defendant under a long-arm statute even where the product was sold and delivered and damage was incurred before the long-arm statute was adopted. See Annot., 19 A.L.R.3d 13, 54. If there is no constitutional bar to using a long-arm statute adopted after a tort or breach of contract has occurred and consequent damages have been suffered, there cannot be a constitutional bar to using post-tort or post-contract but pre-action activity as a basis for jurisdiction.

The majority holds that North Dakota lacks jurisdiction in part because ". . . the interstate transportation activity and the registration with the North Dakota

highway department truck regulatory division and the purchasing of trip permits from such division each time it used the highways were not involved or directly related to the repair service in Montana which allegedly gave rise to the cause of action." Again, the majority says that the contacts "were not directly related to the cause of action and do not constitute contacts for purposes of establishing jurisdiction as indicated in *International Shoe, Denckla,* and *Shaffer, supra.*" These contentions are answered by the Commissioners' Comment to Section 1.03 of the Uniform Interstate and International Procedure Act, from which, as the majority says, our Act was adapted. The Commissioners say [13 U.L.A. Civil Proc. and Rem. Laws, at 287]:

> "In sustaining the exercise of jurisdiction over a defendant who has caused injury in the state by means of a tortious act done outside the state, the courts have often emphasized that the defendant had contacts with the state that bore no relation to the particular tort. See, e. g., *Green v. Robertshaw-Fulton Controls Co.,* 204 F.Supp. 117 (S.D. Ind. 1962); *Sonnier v. Time,* 172 F.Supp. 576 (W.D.La. 1959); *Becker v. General Motors,* 167 F.Supp. 164 (D.Md. 1958); *Jenkins v. Dell Publishing Co.,* 130 F.Supp. 104 (W.D.Pa. 1955); *Gordon Armstrong Co. v. Superior Court,* 160 Cal.App.2d 211, 325 P.2d 21 (1958); *Adamek v. Michigan Door Co.,* 260 Minn. 54, 108 N.W.2d 607 (1961); *Shepard v. Rheem Mfg. Co.,* 249 N.C. 454, 106 S.E.2d 704 (1959)."

In view of this authority, it is obvious that the majority is incorrect in its conclusion that the Federal Constitution requires that the contacts with North Dakota relate to the cause of action. There is no such requirement.[1]

I further suggest that any reference to the inadmissibility of offers of compromise and the doctrine of inconvenient forum are irrelevant to the question of jurisdiction over the defendant. Even if the second repair was made in settlement of a prior dispute, there was a contract to make the repair, and such settlement contracts are enforceable. See *Bohlman v. Big River Oil Co.,* 124 N.W.2d 835 (N.D. 1963).

Questions as to convenience of the forum arise only after jurisdiction is found to exist. Since the majority opinion finds a lack of jurisdiction, no question of convenience of forum should arise. I would defer that question until later, if and when my view as to jurisdiction is accepted.

In my view, Ross Bros. is subject to the jurisdiction of the North Dakota courts. It has "purposely avail[ed] itself of the privilege of conducting activities within the forum State" [*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958)]; and it has had the "minimum contacts" required by *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). No more is required and no new requirements (such as damages suffered after contacts occurred) should be imposed.

I would reverse and remand the case for trial, holding that jurisdiction was acquired under the long-arm rule; that Ross Bros. was transacting business in this State; it contracted to supply and did supply a service (repair) in this State; it committed a tort both within and without the State which caused injury to property within this State; and it engaged in other activities having contact with this State to the extent that the exercise of personal jurisdiction over it does not offend against traditional

---

1. *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal. Rptr. 352, 545 P.2d 264 (1976), upon which the majority relies, applies a concept unique to California, that a special jurisdiction can be acquired over a defendant not subject to general jurisdiction because its activities are not "pervasive," if the tort relates to the limited activity of the defendant. Only California cases are cited in support of this doctrine. The majority opinion also relies on *Aaron Ferer &*

*Sons Co. v. Atlas Scrap Iron,* 558 F.2d 450 (8th Cir. 1977). At most, that case would apply only to arguments based on Rule 4(b)(2)(A). As the court in *Ferer* points out in fn. 7,

> ". . . tort cases involve interests of the state not present in contract cases. [Citation omitted.] Nebraska's long-arm statute also provides for jurisdictional differences between tort and contract actions." 558 F.2d at 455.

notions of justice or fair play or the due process of law. It is therefore amenable to service of process in this State, and the State court acquired jurisdiction over it by reason of the terms of Rule 4(b)(2)(A), (B), (C), and (H), N.D.R.Civ.P.

Of course, I agree that constitutional due-process requirements must be met. The majority opinion says they are not met, but does not specify in what way those requirements are lacking. As I see it, the majority opinion introduces two new requirements for jurisdiction, one that the act sued upon must be related to the contacts with the forum State, and the other that the contacts must precede the act. I find no binding or persuasive authority for either of these propositions. I am satisfied that the minimum contacts [2] are present and due process is satisfied by them, and that North Dakota has jurisdiction over the defendant Ross Bros.

The majority opinion will require North Dakota residents with valid claims against nonresidents, constitutionally within the jurisdiction of North Dakota courts, to bring their actions in other States. It undoes much of the work done in providing long-arm jurisdiction over nonresident defendants.

Justice Pederson joins me in this dissent.

PEDERSON, J., concurs.

2. The contacts may be summarized as follows: Ross Bros. repaired the plaintiff's truck engine, including the replacement of the water hose. After the truck broke down again, in North Dakota, Ross agreed to, and did, come to North Dakota, take possession of the truck, and tow it to Montana. Thereafter, there were about 14 phone calls back and forth between Ross Bros. in Montana and the plaintiff in North Dakota. Finally, Ross Bros. delivered the truck, repaired for the second time, from Montana to North Dakota. Ross Bros. also frequently hauls potatoes from North Dakota to Montana, obtaining a permit from a North Dakota State agency each time it does so.